# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-3075

JOSEPH M. MALINOWSKI,

*Petitioner-Appellant*,

*v.*

JUDY P. SMITH, WARDEN,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 05 C 176—**William E. Callahan, Jr.**, *Magistrate Judge.*

———————

ARGUED MARCH 27, 2007—DECIDED NOVEMBER 27, 2007

———————

Before MANION, KANNE, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* Joseph Malinowski was convicted in Wisconsin state court of second degree sexual assault of a child and repeated sexual assault of a child. After exhausting his state court remedies, Malinowski filed a petition for habeas corpus in the district court, claiming his constitutional rights were violated because the state court prohibited the victim's school counselor from testifying at his criminal trial. The district court denied Malinowski's petition. We affirm.

I.

On May 20, 2002, Malinowski was convicted by a Wisconsin state court jury of second degree sexual assault of a child in violation of Wis. Stat. § 948.02(2), and repeated sexual assault of the same child in violation of Wis. Stat. § 948.025(1). The facts underlying Malinowski's conviction were summarized in the state court of appeals' decision affirming his conviction.

> Samantha [, Malinowski's stepdaughter and the alleged victim,] alleged that Malinowski had repeated sexual contact with her over a period of approximately six months. Her mother had witnessed some inappropriate behavior between them and took Samantha out of school to question her. At that time, Samantha denied any sexual activity. Several days later, her mother again became suspicious and crawled on her hands and knees behind a couch to observe their activity. She observed that her daughter's pants were open with pubic hairs showing and Malinowski fondling that area. She left the house and went to her brother's house and spoke with her sister-in-law, the victim's aunt. The aunt later spoke to Samantha and Samantha told her of numerous instances of sexual contact and intercourse with Malinowski.

*State v. Malinowski*, No. 02-2577-CR, 2003 WL 22004996, *1 (Wis. App. Aug. 26, 2003).

Malinowski pleaded not guilty. Prior to trial, Malinowski sought access to Samantha's school records and filed a motion for an in camera review of those records. The court initially denied Malinowski's request for an *in camera* review, but on reconsideration determined that Malinowski had made a preliminary showing sufficient

to merit an *in camera* review of Samantha's records. However, after reviewing the records, the court held that the records were irrelevant and should not be disclosed.

Malinowski also sought to question Samantha's school counselor, Tom Bosman, at trial. Specifically, Malinowski wanted to elicit testimony from Bosman about Samantha's credibility and Bosman's opinion that she had emotional difficulties that negatively impacted her ability to perceive and relate the truth. The State objected to Bosman testifying, claiming conversations between Bosman and Samantha were privileged under Wis. Stat. § 905.04(2).[1] The state court agreed and prohibited Malinowski from questioning Bosman at trial concerning his opinion of Samantha's credibility and her ability to perceive and relate the truth. Following a three-day trial and before jury deliberations, the prosecution dismissed a charge alleging Malinowski had engaged in oral sex with Samantha. As noted above, the jury convicted

---

[1] Section 905.04(2) provides: "A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made or information obtained or disseminated for purposes of diagnosis or treatment of the patient's physical, mental or emotional condition, among the patient, the patient's physician, the patient's registered nurse, the patient's chiropractor, the patient's psychologist, the patient's social worker, the patient's marriage and family therapist, the patient's professional counselor or persons, including members of the patient's family, who are participating in the diagnosis or treatment under the direction of the physician, registered nurse, chiropractor, psychologist, social worker, marriage and family therapist or professional counselor."

Malinowski of second degree sexual assault of a child in violation of Wis. Stat. § 948.02(2), and repeated sexual assault of the same child in violation of Wis. Stat. § 948.025(1). The jury acquitted Malinowski of a charge that he had sexual intercourse with Samantha and also acquitted him of a bail jumping charge.

Malinowski appealed his conviction to the state appellate court arguing, among other things, that the trial court's ruling that he could not question Bosman violated his constitutional right to provide a defense. The Wisconsin Court of Appeals affirmed Malinowski's conviction and the Wisconsin Supreme Court denied Malinowski's petition for review. Malinowski then filed a habeas action in federal district court, again challenging the state trial court's exclusion of Bosman's testimony. The district court denied Malinowski's petition, concluding that the state appellate court decision barring Bosman's testimony was not contrary to controlling Supreme Court precedent. Malinowski filed a notice of appeal and the district court granted him a certificate of appealability.

## II.

On appeal, Malinowski claims that the district court erred in denying his petition for federal habeas relief. Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

> an application for a writ of habeas corpus may not be granted to a state prisoner whose claim was adjudicated on the merits in state court unless the state court either reached a decision that was "contrary to" "clearly established Federal law, as determined by the

> Supreme Court of the United States," or it unreason-
> ably applied such a law.

*Coulter v. McCann*, 484 F.3d 459, 466 (7th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)).[2]

Initially, Malinowski argues that the standard for habeas relief under the AEDPA does not apply because his claim was not "adjudicated on the merits in State court proceedings." Specifically, Malinowski argues that the state appellate court did not adjudicate the merits of his claim that he was denied his constitutional right to present a defense, but instead ruled solely on the question of the admissibility of the evidence under Wisconsin privilege law.

We explored, in depth, the question of what constitutes an "adjudication on the merits" in *Muth v. Frank*, 412 F.3d 808 (7th Cir. 2005). In *Muth*, the habeas petitioner was convicted in Wisconsin state court of incest and had argued on direct appeal to the state appellate court that Wisconsin's criminal prohibition of incest was unconstitutional. *Id.* at 812. The Wisconsin Court of Appeals affirmed Muth's conviction and he challenged that rul-

---

[2] Section § 2254(d)(1) provides, in full: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim— (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

ing in a habeas petition, arguing, initially, that the AEDPA did not apply because the "Wisconsin Court of Appeals did not reach the merits of his constitutional claim." *Id.* at 814. We summarized the Wisconsin appellate court's reasoning and Muth's argument as follows:

> [I]n *Muth I* the Court of Appeals stated that it agreed with the decision of the trial court that Muth did not have a privacy right to have sexual intercourse with his sister. It also decided, however, that it did not have to reach the conclusion reached by the trial court because it had already decided that the state could prohibit incestuous relationships in an earlier case—*State v. Allen M. Muth I,* slip op. at 2 ("Because we have already concluded that the State has a compelling interest in prohibiting incest, we reject Muth's challenges to the constitutionality of the incest statute."). Muth argues that the Court of Appeals did not adjudicate the merits of his claim because the court in *Allen M.* did not consider the criminal statute at issue here. Instead, *Allen M.* considered Wisconsin's statute that permits the termination of parental rights where the children are the product of an incestuous relationship. *Allen M.,* 571 N.W.2d at 876. Muth thus argues that the Court of Appeals misread or misapplied its earlier decision in *Allen M.* According to Muth, *Allen M.* dealt with a different statute and did not stand for the proposition the court in *Muth I* suggested it did. Because the Court of Appeals relied solely on *Allen M.* to decide *Muth I,* and *Allen M.* did not resolve the claim under Wis. Stat. § 944.06 at issue in *Muth I,* according to Muth, *Muth I* was not an adjudication on the merits.

*Id*. at 814-15.

We rejected Muth's argument, explaining that "[e]ven assuming the Wisconsin Court of Appeals misread or misapplied *Allen M.*, the decision in *Muth I* was an adjudication on the merits of Muth's claim that Wisconsin's criminal prohibition of incest was unconstitutional insofar as it applied to the private conduct of two consenting adults." *Id.* at 815. Additionally, we concluded that the "AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court." *Id.* We then added that several other circuits have held that:

> a state court need not offer *any* reasons and [may] summarily dispose of a petitioner's claim and that summary disposition would be an adjudication on the merits. *Chadwick v. Janecka,* 312 F.3d 597, 606 (3d Cir.), *cert. denied,* 538 U.S. 1000, *Wright v. Dep't of Corrs.,* 278 F.3d 1245, 1254-55 (11th Cir. 2002), *cert. denied,* 538 U.S. 906, *Sellan v. Kuhlman,* 261 F.3d 303, 310-12 (2d Cir. 2001); *Bell v. Jarvis,* 236 F.3d 149, 158-62 (4th Cir. 2000) (en banc); *Harris v. Stovall,* 212 F.3d 940, 943 n.1 (6th Cir. 2000); *Aycox v. Lytle,* 196 F.3d 1174, 1177-78 (10th Cir. 1999); *James v. Bowersox,* 187 F.3d 866, 869 (8th Cir. 1999); *Delgado v. Lewis,* 181 F.3d 1087, 1091-92 n.3 (9th Cir. 1999), *vacated on other grounds by* 528 U.S. 1133; *see also Weeks v. Angelone,* 528 U.S. 225.

*Id.*

We further elaborated on what an adjudication on the merits was by noting that it "is perhaps best understood by stating what it is not: it is not the resolution of a claim on procedural grounds." *Id.* We added that "the district court in this case put it quite succinctly" when it reasoned:

> Nevertheless, the fact that the court of appeals may have misread or misapplied its own precedent does not mean that it did not adjudicate the merits of Muth's constitutional challenge as required by § 2254(d). As noted, the court of appeals framed the issue as whether the incest statute was constitutional and went on to hold that it was. The court's poor reasoning may provide a basis for finding that its decision was "contrary to" or involved an "unreasonable application" of clearly established federal law, but it is not grounds for finding that the court failed to adjudicate the claim on the merits.

*Id.* at 816 (internal quotations omitted). We then concluded that "the Wisconsin Court of Appeals adjudicated Muth's appeal on the merits," and accordingly limited our review "to determining whether the decision reached by *Muth I* was contrary to 'clearly established Federal law' at the time that *Muth I* was decided." *Id.*

Against this backdrop, we consider Malinowski's argument that the Wisconsin Court of Appeals did not adjudicate the merits of his claim. On direct appeal to the Wisconsin Court of Appeals, the court listed the four issues that Malinowski was presenting, including his claim that "the trial court violated Malinowski's due process right to present a defense when it refused to allow him to question a school counselor regarding his opinion of Samantha's honesty and her reputation . . . ." *Malinowski*, 2003 WL 22004996, *1. The court then stated: "We reject these arguments and affirm the judgment." *Id.* However, in an abbreviated analysis of Malinowski's claim, the state appellate court did not mention the due process issue, but rather concluded that:

The trial court correctly ruled that the school counselor would not be allowed to testify to opinions he formed during counseling sessions. Opinions, perceptions and impressions gained during confidential communications are privileged. *Cf. State v. Meeks*, 2003 WI 104, ¶ 40 (relating to confidential communications with an attorney). The counselor testified that all of his information relevant to the case was based on his contact with Samantha in his capacity as a counselor. Her counseling sessions are privileged under Wis. Stat. § 905.04. *Id.* Malinowski also contends that the counselor could have testified to Samantha's reputation for honesty. Aspects of Malinowski's argument appear to suggest that he sought the counselor's opinion on whether Samantha was telling the truth. That testimony would not be permissible. *See State v. Haseltine*, 120 Wis.2d 92, 96, 352 N.W.2d 673 (Wis. App. 1984). It also appears that he sought to disclose specific acts of conduct, contrary to Wis. Stat. § 906.08(2). To the extent he merely wanted to show Samantha's reputation for honesty, other witnesses should have sufficed.

*Malinowski*, 2003 WL 22004996, *2.

Because in analyzing Malinowski's constitutional claim the Wisconsin Court of Appeals did not mention the constitutional issue, but instead focused on state privilege rules, Malinowski maintains that the Wisconsin Court of Appeals did not adjudicate the merits of his constitutional claim. We disagree. As we noted in *Muth*, other circuits have held that "a state court need not offer *any* reasons and [may] summarily dispose of a petitioner's claim and that summary disposition would be an adjudication on the merits." *Muth*, 412 F.3d at 815. Thus, the fact that the Wisconsin Court of Appeals' analysis

was lacking is irrelevant to the question of whether it was an adjudication on the merits. *Id*. at 816 ("As noted, the court of appeals framed the issue as whether the incest statute was constitutional and went on to hold that it was. The court's poor reasoning may provide a basis for finding that its decision was 'contrary to' or involved an 'unreasonable application' of clearly established federal law, but it is not grounds for finding that the court failed to adjudicate the claim on the merits.") (quoting district court opinion). Moreover, as we stated in *Muth*, what adjudication on the merits means "is perhaps best understood by stating what it is not: it is not the resolution of a claim on procedural grounds." *Id.* at 815. Because the Wisconsin Court of Appeals expressly rejected Malinowski's stated arguments, it is clear that the court resolved Malinowski's claims not on procedural grounds, but on the merits.

Malinowski argues that the Wisconsin Court of Appeals did not identify and review the correct claim, which was that he was denied his constitutional right to provide a defense. Not so. As noted above, the Wisconsin Court of Appeals identified as the issue on appeal whether "the trial court violated Malinowski's due process right to present a defense when it refused to allow him to question a school counselor regarding his opinion of Samantha's honesty and her reputation . . . ." *Malinowski*, 2003 WL 22004996, *1. Although the Wisconsin Court of Appeals' analysis focused on the Wisconsin law of privilege and did not cite constitutional principles, in its reasoning the state court also noted that "[t]o the extent [Malinowski] merely wanted to show Samantha's reputation for honesty, other witnesses should have sufficed." *Malinowski*, 2003 WL 22004996, *1. The availability of

other witnesses to testify is irrelevant to the state question of privilege, but would be a factor considered under a due process analysis. *See, e.g., United States v. Scheffer*, 523 U.S. 303, 315 (1998) (noting that the defendant's right to present a defense was violated because the evidentiary ruling "deprived the jury of the only witness who was at the scene . . . ."). This demonstrates that the state court was not merely considering the question of privilege, even if it only cited state privilege law. In any event, at most the state appellate court's opinion shows that its analysis was flawed—not that it was not reviewing the proper claim. The state appellate court properly identified Malinowski's claim, even if it improperly analyzed the claim. *See Muth*, 412 F.3d at 815 (holding that the "AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court"). Accordingly, we conclude that Malinowski's claim that he was denied his constitutional right to present a defense was adjudicated by the state appellate court.

Because the Wisconsin Court of Appeals adjudicated Malinowski's constitutional claim, the AEDPA applies. Under the AEDPA, as noted above, a federal court may not grant a state prisoner habeas relief "unless the state court either reached a decision that was 'contrary to' 'clearly established Federal law, as determined by the Supreme Court of the United States,' or it unreasonably applied such a law." *Coulter*, 484 F.3d at 466 (quoting 28 U.S.C. § 2254(d)(1)). A decision is "contrary to" federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state

court confronts facts that are materially indistinguish-
able from relevant Supreme Court precedent and arrives
at a result opposite" that reached by the Supreme Court.
*Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court
decision is an "unreasonable application" of clearly
established federal law when the court either "identifies
the correct governing legal rule from [Supreme Court
precedent] but unreasonably applies it to the facts of the
particular state prisoner's case," or "unreasonably extends
a legal principle from [Supreme Court] precedent to a
new context where it should not apply or unreasonably
refuses to extend that principle to a new context where
it should apply." *Id.* at 407.

On appeal, Malinowski argues that even under the
AEDPA standard, he is entitled to habeas relief because the
state court's decision was contrary to clearly established
federal law. " 'Clearly established' Supreme Court prece-
dent is 'the holdings, as opposed to the dicta, of the
[Supreme] Court's decisions as of the time of the relevant
state-court decision.' " *Muth*, 412 F.3d at 814 (quoting
*Lockyer v. Andrade,* 538 U.S. 63, 71 (2003)). We turn then
to the controlling Supreme Court precedent on the right
to present a defense.

The Supreme Court in *Taylor v. Illinois*, 484 U.S. 400, 409
(1988), explained that the right to offer testimony is
grounded in the Sixth Amendment and that "[t]his right
is a fundamental element of due process of law." (internal
quotation omitted). However, the right is not absolute.
*United States v. Scheffer*, 523 U.S. 303, 308 (1998) (internal
quotations omitted). Rather, "a defendant's interest in
presenting such evidence may . . . bow to accommodate
other legitimate interests in the criminal trial process." *Id.*
The exclusion of evidence in a criminal trial "abridge[s] an

accused's right to present a defense" only where the exclusion is " 'arbitrary' or 'disproportionate to the purpose [it is] designed to serve.' " *Id. Scheffer* then cited three other Supreme Court cases where the Court found that the exclusion of evidence abridged the accused's right to a fair trial, namely *Rock v. Arkansas*, 483 U.S. 44 (1987), *Washington v. Texas*, 388 U.S. 14 (1967), and *Chambers v. Mississippi*, 410 U.S. 284 (1973). Malinowski relies on these three cases, along with *Davis v. Alaska*, 415 U.S. 308 (1974), to support his claim that the state court's decision was contrary to clearly established federal law. Accordingly, we turn to those cases to determine whether the exclusion of Bosman's testimony violated clearly established federal law, as determined by Supreme Court precedent.

First, in *Rock*, the defendant was charged with, and convicted of, manslaughter for the shooting of her husband. The defendant was the only witness to the crime and allegedly remembered the facts surrounding the shooting only after being hypnotized. *Rock*, 483 U.S. at 46. Under Arkansas law, hypnotically refreshed testimony was inadmissible and, accordingly, the state trial court limited the defendant's testimony to matters remembered and stated to the examiner prior to hypnosis. *Id.* at 56. The Supreme Court held that the exclusion of the defendant's post-hypnotic testimony violated the defendant's "right to present a defense," because the ruling "deprived the jury of the testimony of the only witness who was at the scene and who had firsthand knowledge of the facts." *Scheffer*, 523 U.S. at 315 (explaining *Rock*'s holding and reasoning) (citing *Rock*, 483 U.S. at 57). The Supreme Court in *Scheffer* further explained its reasoning in *Rock*, noting the exclusion in *Rock* "infringed upon the defendant's interest in testifying in her own defense—an interest that

[the Court] deemed particularly significant, as it is the defendant who is the target of any criminal prosecution." *Scheffer*, 523 U.S. at 315-16 (citing *Rock*, 483 U.S. at 52).

The holding in *Rock* does not establish that the exclusion of Bosman's testimony violated federal law. First, and most significantly, unlike *Rock*, in this case Malinowski was not seeking to testify in his own defense. The Supreme Court deemed the fact that the evidentiary ruling in *Rock* barred the defendant from testifying in her own defense "particularly significant." *Scheffer*, 523 U.S. at 315 (explaining *Rock*'s holding and reasoning) (citing *Rock*, 483 U.S. at 52). Second, in *Rock*, the Court found it significant that the excluded testimony was that of the only witness to the crime, whereas in this case Bosman was not a witness to the crime. Nor was he the only party who could testify about Samantha's character for truthfulness or her emotional problems. Accordingly, *Rock* does not establish that the exclusion of Bosman's testimony was disproportionate to the purpose the exclusion was designed to serve, namely to protect privileged communications.

*Washington* also does not establish a constitutional violation. In *Washington*, 388 U.S. 14, a Texas law prohibited coparticipants in a crime from testifying for one another. *Id.* at 16. Based on this law, the state trial court prohibited the defendant, Jackie Washington, from calling his already convicted accomplice as a witness to testify that he (the accomplice) had in fact committed the crime. *Id.* at 16-17. The Supreme Court held that by prohibiting an alleged accomplice from testifying on Washington's behalf, Washington:

> was denied his right to have compulsory process for obtaining witnesses in his favor because the State

arbitrarily denied him the right to put on the stand a
witness who was physically and mentally capable of
testifying to events that he had personally observed,
and whose testimony would have been relevant and
material to the defense.

*Id.* at 23. The Court in *Washington* further found that the
exclusion of the evidence violated the defendant's con-
stitutional rights because the evidentiary rule did not
advance a legitimate interest of the state. *Id.* at 22-23.
Conversely, in this case, the state has an undisputedly
legitimate interest in the protection of confidential com-
munications. Additionally, in *Washington*, the defendant
was precluded from calling a witness who could have
testified that he (the witness) had committed the crime,
whereas in this case Bosman would have merely testified
about his perceptions about Samantha's credibility and
truthfulness. Thus, *Washington* does not establish a clear
violation of federal law.

   Next, Malinowski points to *Chambers v. Mississippi*,
410 U.S. 284 (1973). In *Chambers*, the defendant was con-
victed of shooting a police officer. *Id.* at 285. At trial, the
defendant had sought to examine Gable McDonald as an
adverse witness. *Id.* at 291. Chambers sought to show
that McDonald had previously confessed to shooting the
officer, but later repudiated his confession. *Id.* at 289. The
state trial court barred Chambers' request to question
McDonald as an adverse witness on the basis of a Missis-
sippi common-law rule that a party may not impeach
his own witness. *Id.* at 295. Chambers also sought to
present testimony from other witnesses to the effect that
McDonald had told those witnesses that he (McDonald)
had shot the police officer. *Id.* at 298. The state trial court
excluded that testimony on hearsay grounds. The Supreme

Court held "that the exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine McDonald, denied him a trial in accord with traditional and fundamental standards of due process." *Id.* at 302. The Supreme Court, however, stressed that its holding does not "signal any diminution in the respect traditionally accorded to the States in the establishment and implementation of their own criminal trial rules and procedures. Rather, we hold quite simply that under the facts and circumstances of this case the rulings of the trial court deprived Chambers of a fair trial." *Id.* at 302-33.

The Supreme Court's holding in *Chambers* also does not establish that the exclusion of Bosman's testimony violated Malinowski's constitutional rights. In *Chambers*, the defendant was precluded from presenting evidence that another person had confessed to the charged offense. Conversely, in this case, Malinowski sought to present Bosman's testimony concerning Samantha's credibility. The excluded testimony in this case is far short of that at issue in *Chambers* for establishing a clear violation of federal law. Additionally, in this case, Malinowski directly challenged Samantha's credibility through cross-examination and by presenting testimony from a family friend that Samantha was "an untruthful person." Thus, unlike the facts in *Chambers*, Malinowski was able to present his theory of defense to the jury and to provide evidence that supported his theory. In short, this case in no way compares with *Chambers.* As the Supreme Court stressed in *Chambers*, its holding was based on the "facts and circumstances" of the case and it was not diminishing "the respect traditionally accorded to the States in the establishment and implementation of their own criminal

trial rules and procedures." *Id.* Accordingly, *Chambers* does not constitute clearly established precedent supporting Malinowski's claim.

Finally, Malinowski claims that *Davis v. Alaska*, 415 U.S. 308 (1974), clearly established a constitutional right to call and question Bosman. In *Davis*, the state court had refused to allow the defendant to cross-examine the key prosecution witness concerning the witness' probation status following an adjudication of juvenile delinquency. *Id.* at 310-11. The Supreme Court held that while the state had a legitimate interest in protecting the confidentiality of a juvenile offender's record, "the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest . . . ." *Id.* at 320. The Court noted that "[t]he State could have protected [the witness] from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case . . . ." *Id.* at 320.

Based on *Davis*, Malinowski argues that the state could have asked Samantha to waive her privilege and/or not called Samantha to testify. With regard to the waiver question: While a patient may waive privilege, in this case, the state trial court noted "that the victim through her mother had claimed privilege" concerning Bosman's testimony. By asserting the privilege, Samantha implicitly rejected any waiver of privilege. Further, *Davis* does not require the state to proceed without calling Samantha. In *Davis*, it was the witness himself whom the trial court refused to allow to be cross-examined. *Id.* at 309-10. Conversely, in this case, Samantha was cross-examined and Malinowski called another witness who testified that Samantha "is an untruthful person." Thus, while in *Davis*

a jury could not assess the witness' testimony without allowing him to be cross-examined regarding his juvenile record, in this case, the jury could assess Samantha's credibility based on Malinowski's cross-examination of Samantha and the questioning of other witnesses.

Not only do none of the cases Malinowski cites establishes that the exclusion of Bosman's testimony violated his constitutional rights, but the Supreme Court's decision in *Scheffer* demonstrates that there was no clear violation of federal law. In *Scheffer*, a military judge barred the defendant from presenting evidence that he passed a polygraph examination, based on Military Rule of Evidence 707. 523 U.S. at 306. The defendant appealed, claiming that his constitutional right to present a defense was violated by the exclusion of the polygraph evidence. *Id.* at 308. The Supreme Court rejected Scheffer's argument, noting that

> [t]he three of our precedents upon which the Court of Appeals principally relied, *Rock v. Arkansas, Washington v. Texas*, and *Chambers v. Mississippi*, do not support a right to introduce polygraph evidence, even in very narrow circumstances. The exclusions of evidence that we declared unconstitutional in those cases significantly undermined fundamental elements of the defendant's defense. Such is not the case here.

*Id.* at 315. The Supreme Court reasoned that "the Rule did not preclude [the defendant] from introducing any factual evidence," but "merely from introducing expert opinion testimony to bolster his own credibility." *Id.* at 317. Similarly, in this case Bosman's testimony did not significantly undermine the fundamental elements of Malinowski's defense, but rather sought to attack Samantha's credibility in a way that other witnesses could have.

Accordingly, Supreme Court precedent does not establish that the exclusion of Bosman's testimony was a constitutional violation.

Malinowski also argues that the Wisconsin Court of Appeals' decision is "contrary to federal law" because the state court relied on the wrong legal standard in assessing his claim. Specifically, Malinowski claims that the state court applied solely state evidentiary standards, as opposed to the governing constitutional standard as set forth in *Rock, Davis, Chambers,* and *Washington.* Malinowski adds that "[t]he state court cited no constitutional authority and failed to identify any constitutional standard for the assessment of whether the exclusion of evidence violates one's due process right to present a defense." However, as the Supreme Court explained in *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003), "[a] state court's decision is not 'contrary to' . . . clearly established Federal law simply because the court did not cite [the Supreme Court's] opinion." *Id.* Moreover, as explained above, while the Wisconsin Court of Appeals did not cite constitutional principles, in its reasoning it noted that "[t]o the extent [Malinowski] merely wanted to show Samantha's reputation for honesty, other witnesses should have sufficed." *Malinowski*, 2003 WL 22004996, *1. This indicates that the state appellate court was not merely applying state evidentiary standards to the legal question. However, even if the state appellate court had applied the wrong legal standard, that does not entitle Malinowski to habeas relief. As analyzed at length above, applying the correct constitutional standard leads to the same conclusion, namely that the exclusion of Bosman's testimony was not contrary to federal law, as determined by the Supreme

Court. As we explained in *Winters v. Miller*, 274 F.3d 1161 (7th Cir. 2001), in denying the petitioner habeas relief,

> [i]ndeed, the Indiana courts did misapply the *Lockhart* standard in analyzing Winters' claim. Nevertheless, our review under the proper standard set forth in *Strickland* renders the same results. Winters fails to establish circumstances that amount to ineffective assistance of appellate counsel under the *Strickland* framework. The Indiana courts did not act unreasonably or contrary to established federal law in refusing to reverse or set aside Winters' conviction.

*Id.* at 1168. Accordingly, even if the Wisconsin Court of Appeals had applied the wrong standard, the proper standard results in the same conclusion—that Malinowski's constitutional right to present a defense was not violated.

III.

The state appellate court adjudicated Malinowski's constitutional challenge to the exclusion of Bosman's testimony on the merits. Accordingly, the AEDPA standards apply. Under the AEDPA, a petitioner is entitled to habeas relief only if the state court decision was contrary to or an unreasonable application of federal law, as defined by Supreme Court precedent. The exclusion of Bosman's testimony was neither. Accordingly, the district court properly denied Malinowski habeas relief. We affirm.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*