In the

# United States Court of Appeals
### For the Seventh Circuit

No. 13-1535

DANIEL HANSON,

*Petitioner-Appellant*,

*v.*

DAVID BETH, KENOSHA COUNTY SHERIFF,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 12-CV-408 — **J. P. Stadtmueller**, *Judge*.

ARGUED NOVEMBER 15, 2013 — DECIDED DECEMBER 17, 2013

Before FLAUM and HAMILTON, *Circuit Judges*, and
KAPALA, *District Judge*.[*]

FLAUM, *Circuit Judge*. Daniel Hanson appeals from the
district court's denial of his petition for a writ of habeas corpus, which challenges his state conviction for fleeing and
eluding a Wisconsin traffic officer. At his trial, Hanson

---

[*] Of the Northern District of Illinois, sitting by designation.

sought to introduce testimony that the police officer from whom he fled had a "confrontational, aggressive and hot-tempered" character, but the trial court excluded the evidence under Wisconsin's analogue to Federal Rule of Evidence 404(a). Hanson was convicted and sentenced to sixty days in jail. He petitioned for a writ of habeas corpus, claiming that the trial court's evidentiary ruling abridged his constitutional right to present an effective defense. Because we do not find the last state-court decision addressing this claim to be contrary to, or an unreasonable application of, Supreme Court precedent, we affirm.

## I. Background

On June 29, 2006, Kenosha County Sheriff's Deputy Eric Klinkhammer initiated a traffic stop after he clocked Daniel Hanson's Ford Mustang travelling 15 mph over the speed limit. It is fair to say that the stop did not pan out as either party might have wished.

Upon coming to a halt, Hanson got out of his vehicle waving his driver's license. Klinkhammer told Hanson to get back into his car. He testified that Hanson was yelling that the officer "was taking his rights away and that he didn't want to be there" and was acting bizarrely. Hanson, however, stated that Klinkhammer was the one screaming—"really loudly and very frighteningly"—and said that he found the situation disorienting and confusing. Klinkhammer extended his police baton and again ordered Hanson to get back into his vehicle. Hanson finally returned to the driver's seat. Klinkhammer then approached the car on the passenger side, informed Hanson that he had been speeding, and took Hanson's license.

As Klinkhammer walked back towards his police cruiser, Hanson exited the car a second time. Once again the situation became very tense. Klinkhammer re-brandished his baton and ordered Hanson to return to the car; eventually he told Hanson that he was under arrest. Suddenly, Hanson turned and made a break for his vehicle. Klinkhammer grabbed at Hanson's shirt and struck him with the baton. However, Hanson tore himself loose, got back into the car, and locked the doors.

Once inside the car, Hanson drove off and called 911 to get directions to the nearest police station. He told the dispatcher that Klinkhammer was endangering his life, and that he wanted to find "cooler heads" to defuse the situation. The dispatcher told him not to move because backup was on the way, but Hanson refused and insisted that he did not feel safe. Eventually, the dispatcher relented and gave Hanson directions to the Pleasant Prairie police station. Klinkhammer followed in his cruiser. A witness testified that Hanson was driving safely down the highway, but Klinkhammer said that at one point Hanson cut off a vehicle while changing lanes.

At the off-ramp, another police car tried to block Hanson's progress, but Hanson navigated around it. The chase—such as it was—ended when Hanson stopped at a red light and police surrounded his car with guns drawn. Hanson, who later recounted that he had been absolutely terrified, turned off his engine and put his hands up. Klinkhammer demanded that Hanson open the door and exit the vehicle. Hanson did not comply, so the officers smashed the car window, pulled him out, and arrested him.

Hanson was eventually charged under Wisconsin's felony fleeing-and-eluding statute, Wis. Stat. § 346.04(3). His trial strategy was to argue that he fled in self-defense because he legitimately and reasonably feared for his safety. In support of this theory, he moved in limine to introduce testimony from a high-school principal under whom Klinkhammer had worked as the school's liaison officer. The principal was prepared to testify that Klinkhammer had a "reputation as being confrontational, aggressive and hot-tempered."

Importantly, Hanson did not claim that he knew of Klinkhammer's reputation prior to their encounter. Rather, he sought to advance a pure propensity theory: the principal's evidence showed that Klinkhammer was an aggressive person in general, and that made it more likely that Klinkhammer acted aggressively during the June 29 traffic stop. Like federal courts, Wisconsin largely excludes propensity evidence. Wis. Stat. § 904.04(1); Fed. R. Evid. 404(a)(1). But, also like federal courts, Wisconsin makes an exception if the character evidence is offered by the accused in a criminal case in order to prove "a pertinent trait of character of the victim of the crime." Wis. Stat. § 904.04(1)(b); *accord* Fed. R. Evid. 404(a)(2)(B).

Hanson accordingly argued that, within the meaning of the Wisconsin rule, Klinkhammer was a "victim" of Hanson's conduct. *Cf. State v. Haase*, 293 Wis.2d 322, 330 (Ct. App. 2006) (holding that where the defendant eluded a police officer and caused damage to a squad car, the officer was a "victim" for purposes of restitution). The trial court rejected Hanson's theory. It concluded that fleeing-and-eluding was a "victimless crime" to which the exception in § 904.04(1)(b) did not apply. *See* 7 Daniel D. Blinka, *Wisconsin Practice Se-*

*ries: Wisconsin Evidence* § 404.5, at 165–66 (3d ed. 2008) (noting that "so-called 'victimless crimes' (e.g., drug dealing) fall within the general ban against using third-parties' character as circumstantial evidence of conduct").

Although deprived by this ruling of his corroborating propensity evidence, Hanson was still able to explain to the jury that he acted in self-defense. Even so, the jury convicted him. He appealed to the Wisconsin Court of Appeals and again to the Wisconsin Supreme Court. *State v. Hanson*, 330 Wis.2d 140 (Ct. App. 2010); *State v. Hanson*, 338 Wis.2d 243 (2012). Both courts approved of the trial court's interpretation of Wisconsin's rules of evidence and affirmed Hanson's conviction. Hanson began serving his prison sentence on March 24, 2012, during which time he filed his petition for a writ of habeas corpus.[1]

## II. Discussion

So far, all we have described is a dispute about the meaning of the term "victim" in Wis. Stat. § 904.04(1)(b). We may not quarrel with the Wisconsin Supreme Court's interpretation of its own rules of evidence, for "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). But the question Hanson asks us to decide here is different (a point that may have been somewhat lost during the state's oral argument). Hanson contends that, taking

---

[1] Although Hanson has since been released from prison, his habeas petition is not moot because Wisconsin has not rebutted—indeed, has conceded—the presumption that his felony conviction carries collateral consequences. *See Eichwedel v. Curry*, 700 F.3d 275, 279 (7th Cir. 2012); *Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998).

as given that Wisconsin's rules precluded him from introducing evidence in support of his self-defense theory, the application of those rules at his trial violated his federal rights—specifically, his constitutional right to present an effective defense. *See, e.g., Harris v. Thompson*, 698 F.3d 609, 626 (7th Cir. 2012) (noting that various constitutional provisions together "embod[y] a substantive right to present a meaningful and complete defense").

Our review of this federal question begins with the decision of the last state court to adjudicate the merits of the petitioner's claim—here, the Wisconsin Supreme Court. *Kamlager v. Pollard*, 715 F.3d 1010, 1015 (7th Cir. 2013). The bulk of Hanson's argument before the state supreme court concerned issues of state law. But he also raised the constitutional claim we have just described, albeit "only in a cursory fashion." *Hanson*, 338 Wis.2d at 265. The court dismissed it as follows:

> The right to present a defense is grounded in principles of due process and confrontation, and ensures that criminal defendants are not deprived of legitimate opportunities to challenge the State's theory, and generally to present evidence that could create reasonable doubt in the minds of members of the jury. *See Chambers v. Mississippi*, 410 U.S. 284, 294–95 (1973). That right is limited, though, as this court and the United States Supreme Court have recognized. *See, e.g., Taylor v. Illinois*, 484 U.S. 400, 410 (1988) (acknowledging limitations on constitutional right to present a defense, including exclusion of evidence "inadmissible under standard rules of evidence"); *State v. Pulizano*, 155 Wis. 2d 633, 646–47 (1990)

> (same). As these and many other cases make clear, the rules of evidence generally have been held to comply with the constitutional right to present a defense. Hanson's challenge does nothing to draw those precedents into question. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Davis v. Washington*, 547 U.S. 813, 822 (2006) (discussing exceptions to the hearsay rule and the right of confrontation).

*Id.* at 265–66 (parallel citations omitted).

Because this habeas corpus case involves a state-court judgment, Hanson must show that the quoted paragraph was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For a decision to be "contrary" to clearly established law, it must either apply a rule that contradicts the governing law set forth in a Supreme Court case or come to a different outcome than the Supreme Court has reached on materially indistinguishable facts. *See Brown v. Payton*, 544 U.S. 133, 141 (2005). For a decision to involve an "unreasonable application" of clearly established law, the state court must apply the Supreme Court's precedents to the facts "in an objectively unreasonable manner." *Id.*

The Supreme Court has not spoken directly to the constitutionality of rules like Federal Rule of Evidence 404(a)(2)—a problem for Hanson. *Cf. Pack v. Page*, 147 F.3d 586, 589 (7th Cir. 1998) ("[T]he Supreme Court has yet to hold that any application of a rape-shield statute is inconsistent with the Constitution, making it particularly hard to say that failure to make a constitutional exception … is 'contrary to … clearly established Federal law.'"). Instead, it has described the

parameters of the right to present an effective defense in more general terms. The Court's cases stand for two basic propositions. First, rules of evidence must yield to a defendant's constitutional right to present a defense when the rules "infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal quotation marks and alterations omitted); *see also Rock v. Arkansas*, 483 U.S. 44, 55 (1987) ("[A] state rule of evidence … may not be applied mechanistically to defeat the ends of justice."). Second, despite this limitation, "[s]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes*, 547 U.S. at 324 (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).

Hanson argues that the Wisconsin Supreme Court's decision was contrary to this body of law because the court never asked whether applying § 904.04(1)(b) to exclude character evidence about Klinkhammer was arbitrary or disproportionate to the rule's purpose. Indeed, the court did not identify a purpose at all. It simply reasoned that (1) there is a right to present a defense, although it is limited; (2) most rules of evidence comply with this right; and (3) § 904.04(1)(b) is one of those rules.

All this is true, but it does not follow that the state court applied the wrong rule. At most, Hanson's argument shows that the court voiced no rule at all—that it moved from a major premise (most rules of evidence are constitutional) to a conclusion (this rule of evidence is constitutional) without stating the minor premise that linked the two. Yet the Supreme Court has said that a state court does not need to cite,

or even be aware of, its precedents "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Stock v. Rednour*, 621 F.3d 644, 648 (7th Cir. 2010) ("Our review is of the state court's decision, not the cases that it cited (or failed to cite) along the way."). The "contrary to" prong of § 2254(d) requires Hanson to show more than the state's failure to cite *Holmes*, *Rock*, or some other like case to justify its conclusion. It requires him to show that the state court's decision "contradicts" clearly established law, *Brown*, 544 U.S. at 141, and nothing the state court said about Hanson's federal claim is out of step with the Supreme Court's cases. To the contrary, the court accurately stated their holdings.

The second way Hanson can satisfy § 2254(d) is if the Wisconsin Supreme Court unreasonably applied clearly established law—if its "ruling on the claim being presented in federal court was so lacking in justification that there was an error … beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). Federal courts must adopt this deferential approach even when state-court decisions give no reasons for an outcome at all. *See id.* at 786 (facing a state court's one-sentence summary disposition, "a habeas court must determine what arguments … could have supported[] the state court's decision."). It follows that federal courts must do the same where, as here, the state court gave some reasons for an outcome without necessarily displaying all of its reasoning.

*Malinowski v. Smith*, 509 F.3d 328 (7th Cir. 2007), is instructive. In that case, a state trial-court excluded, as privileged, testimony by the victim's school counselor concerning the young victim's difficulty perceiving and relating the

truth. The defendant claimed that this violated his right to present a defense. The operative state-court decision did not reference the *Holmes/Rock* test, or even any federal law at all. Nevertheless, examining the relevant Supreme Court cases and the Wisconsin law at issue, we concluded that a fair-minded jurist could determine that the evidence was constitutionally excluded, and so we denied the writ. *Id.* at 335–39.

The Wisconsin Supreme Court's decision in this case was likewise well within the realm of reasonableness. To begin with, the balancing approach required by *Holmes* and *Rock* involves very general interests. For that reason, we recently cautioned against reading *Rock* too broadly in the habeas context. *See Arredondo v. Huibregtse*, 542 F.3d 1155, 1170 (7th Cir. 2008). We also noted that "a state court's application of the *Rock* methodology entails a substantial element of judgment," so that the state court "is entitled to more leeway" on habeas corpus review. *Id.* (internal quotation marks omitted). Our review of the Wisconsin's court's decision is thus even more deferential than usual.

Wis. Stat. § 904.04(1)(b) also tracks FRE 404(a)(2)(B) and thus falls squarely within those "standard rules of evidence" that the Supreme Court has said almost always pass constitutional muster. *Taylor v. Illinois*, 484 U.S. 400, 410 (1988). Just this year, the Court observed that "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (per curiam). The Court also noted that the "constitutional propriety" of a state rule that was "akin to [a] widely accepted rule of evidence … cannot be seriously disputed." *Id.* at 1993; *see also Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) ("[A]ny

number of familiar and unquestionably constitutional evidentiary rules authorize the exclusion of relevant evidence."); *Harding v. Sternes*, 380 F.3d 1034, 1048 (7th Cir. 2004) ("Rule 404(b) is not unconstitutional and therefore Illinois' equivalent is not unconstitutional.").

We think it very unlikely that § 904.04(1) would disturb this trend. As the Wisconsin Supreme Court observed in regards to the state evidentiary issue, excluding the character evidence about Klinkhammer served important, nonarbitrary goals. The evidence "would have added little to the jury's understanding of [Hanson's] actions during the traffic stop, and … likely would have confused the relevant issues." *Hanson*, 338 Wis.2d at 265. These are classic reasons to exclude character evidence. *See, e.g.*, *Michelson v. United States*, 335 U.S. 469, 476 (1948) (the exclusion of character evidence "tends to prevent confusion of issues … and undue prejudice"); Advisory Committee's Note to Fed. R. Evid. 404(a) (1972) ("Character evidence is of slight probative value and … tends to distract the trier of fact from the main question of what actually happened on the particular occasion.").

Nor does the exclusion of Hanson's proffered character evidence seem "disproportionate" to these interests. *Holmes*, 547 U.S. at 324. Even though the high-school principal's testimony was excluded, "the exclusion of this character evidence did not prevent the real controversy"—Hanson's self-defense claim—"from being tried." *Hanson*, 330 Wis.2d at 155. As the Wisconsin Court of Appeals noted, Hanson told the jury directly about his version of the traffic stop. He testified that Klinkhammer "screamed 'at the top of his lungs,' took out his baton, acted 'gruffly' and 'angrily' in taking Hanson's license, grabbed him, ripped his shirt, and struck

him on the back of the head." *Id.* In addition, "[t]he jury also heard testimony from four character witnesses that Hanson is a truthful and fair person," *id.*, along with testimony from Klinkhammer, another police officer, an intern riding in Klinkhammer's car, and an onlooker, *id.* at 150. In light of Hanson's opportunity to make his case and the risks associated with character evidence in general, there is little reason to think that excluding the evidence violated Hanson's constitutional rights. *Cf. Fontini v. Murphy*, 257 F.3d 39, 47 (1st Cir. 2001) (rejecting a challenge to the exclusion of evidence where the defendant "offered direct testimony on the pertinent issue" of self-defense and the exclusion was "at best indirect evidence which [did] no more than add to existing proof that [the victim] was in a mood to lunge").

One other aspect of Hanson's position is worth pausing to consider. A traditional rationale for victim-character rules like § 904.04(1)(b) is that they give defendants "a counterweight against the strong investigative and prosecutorial resources of the government." Christopher B. Mueller & Laird C. Kirkpatrick, *Evidence: Practice Under the Rules* 264–65 (2d ed. 1999). The gist of Hanson's argument is that both the defendant charged with fleeing the police and the defendant charged with assault need such a counterweight. Both seek to introduce character evidence for the same purpose: to show that they acted (i.e., fled or attacked) because of another person's (i.e., the police officer or the victim's) aggressive actions. Yet only the latter defendant is allowed to introduce the evidence at trial. Indeed, as Hanson notes, Wisconsin's interpretation of "victim" implies that he would have been better off—from an evidentiary perspective—if he had as-

saulted Officer Klinkhammer instead of driving to the police station.[2]

At bottom, then, Hanson's argument is not really about whether an individual affected by a particular crime is a "victim" or not. It is about whether, once a state decides that *some* third-party propensity evidence can be introduced to show a defendant acted in self-defense, the state must give an airtight rationale for extending that option to defendants charged with some crimes but not others.

That is a tall order. The narrow exceptions that allow certain types of propensity evidence to be used in criminal trials have a long pedigree, and are now "so deeply imbedded in our jurisprudence as to assume almost constitutional proportions and to override doubts of the basic relevancy of the evidence." Advisory Committee's Note to Fed. R. Evid. 404(a). But their basis "lies more in history and experience than in logic." *Id.* They are "dispensation[s] from the ordinary rules of evidence, and a curious dispensation indeed." *United States v. Burke*, 781 F.2d 1234, 1239 (7th Cir. 1985). The victim exception in particular was historically confined largely to cases involving homicide, assault, or rape, even though, as Hanson contends, its rationale might arguably cut more broadly. *See* H. Richard Uviller, *Evidence of Character to Prove Conduct: Illusion, Illogic, and Injustice in the Courtroom*, 130 U. Penn. L. Rev. 845, 856 n.34 (1982).

The Supreme Court long ago acknowledged "the general opinion of courts, textwriters and the profession that" as-

---

[2] But note: battery of a police officer is a Class H felony (punishable by up to 6 years in prison) while simply fleeing is only Class I (up to 3 years, 6 months). See Wis. Stat. §§ 346.17(3)(a), 939.50(3) & 940.20(2).

pects of character-evidence law are "archaic, paradoxical and full of compromises and compensations." *Michelson*, 335 U.S. at 486. "To pull one misshapen stone out of the grotesque structure," as Hanson suggests we do here, may similarly be "more likely simply to upset its present balance between adverse interests than to establish a rational edifice." *Id.*

In any event, the standards that govern habeas corpus review of state-court judgments ensure that we need not decide that question in this case. Excluding the character evidence about Officer Klinkhammer focused the jury on the relevant issues while still permitting Hanson to make a vigorous case that he was acting in self-defense when he fled the scene of the traffic stop. The Wisconsin Supreme Court's decision rejecting Hanson's constitutional claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and we must therefore deny Hanson's petition.

### III. Conclusion

We AFFIRM the judgment of the district court.