STATE of Wisconsin, Plaintiff-Respondent,

v.

John E. OLSON, Defendant-Appellant,†

Lyle W. PILARSKI, Defendant.

Court of Appeals

*No. 96–2142–CR. Submitted on briefs September 4, 1997.—Decided March 17, 1998.*

(Also reported in 579 N.W.2d 802.)

†Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jean M. Kies,* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *David J. Becker*, assistant attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

SCHUDSON, J. John E. Olson appeals from the judgment of conviction, following a jury trial, for four counts of first-degree sexual assault of a child, two counts of second-degree sexual assault of a child, and one count of exposing a child to harmful materials, all with the habitual criminality enhancement. He argues that the trial court erred in admitting a chart, which was prepared by the prosecutor as the State's witnesses testified, summarizing their testimony. He also argues that the trial court inaccurately instructed the jury regarding its use of the chart.

Although the chart was not a "summary" of evidence under § 910.06, STATS., and although its preparation was problematic in some respects, we conclude that its admission, as qualified by the trial court's cautionary instruction, was within the trial court's proper "exercise" of "reasonable control over the mode . . . of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation

effective for the ascertainment of the truth," pursuant to § 906.11(1), STATS. Therefore, we affirm.

## I. Background

Olson and codefendant Lyle W. Pilarski were tried together in an eight-day, thirteen-count trial involving crimes against ten girls. As each child testified, the prosecutor entered check marks on a 2' x 3' chart displayed on an easel in full view of the attorneys, judge, and jury. (A copy of the chart, with the children's names omitted, is included as Appendix A to this decision.) Half the chart applied to each defendant. For each child-victim of each defendant, the chart had eight boxes—one labeled "movie," for the harmful materials count, and seven boxes labeled with letters standing for specific kinds of sexual contact ("H→ BUTT," hand to buttocks; "H→B," hand to breast; "H→ V," hand to vagina; "M→V," mouth to vagina; "P→V," penis to vagina; "P→M," penis to mouth; and "P→H," penis to hand). In addition, entries at the left margin stated, "M→B," mouth to breast, and "M→B KISS." Those entries and the check marks were color-coded to signify whether the sexual contact was inside or outside the child's clothing.

During the fourth day of trial, Pilarski's counsel "ask[ed] the Court for a Motion in Limine excluding the chart." Olson's counsel did not join in the motion. The trial court noted that "[t]he chart ha[d] not been used in the manner that [the trial court] anticipated," but permitted the prosecutor "to continue to proceed as she wishe[d] for the rest of the day," and reserved ruling on the motion until the next day of trial.

The next day of trial, Pilarski's counsel elaborated on the basis for her motion. She contended that some of the prosecutor's check marks did not accurately reflect

733

testimony and other check marks were imprecise because they did not distinguish between a child's description of her own victimization and a child's description of observations of other children's victimization. Primarily, however, counsel argued that the chart was "terribly prejudicial" because some of the check marks signifying "particular acts" described by the witnesses actually referred to "uncharged misconduct" they had described and, therefore, were "really . . . going up there [on the chart] for purposes of showing propensity." Olson's counsel then "join[ed] in that objection of [sic] the chart."

The prosecutor did not address the "propensity" issue, but told the trial court that she had been entering a check on the chart "for each item of sexual intercourse or contact that each witness testifie[d] to." She further stated that she intended to continue to do so and to ask that the chart "be received as evidence." Overruling the defense objections, the trial court stated, in part:

> I'm going to continue to allow the state to use it. I won't make a final ruling on it but, I have real concerns about whether this summary exhibit should be received as a summary of the evidence. I was very surprised that more jurors didn't proceed to take notes in a case where they were told that there were going to be a lot of witnesses testifying, a lot of victim witnesses, a lot of children and where the trial was going to go possibly two weeks. Jurors need some help in a case like this sorting out who's who and what has been alleged as to whom.
>
> When this chart is finished, it's certainly going to be filled with check marks. I don't see that as a propensity problem. My concern is that all it's going to remind the jurors is that a lot of kids testified

734

about a lot of different types of conduct. They're going to know that. They already know that. But there's no distinction here in terms of whether it's the child victim herself saying that somebody touched me there or someone else saying out of all this touching of kids, I remember that my friend . . . was touched in the following ways and not touched in some other ways.

I think one type of testimony has a lot more credibility in terms of being specifically correct as to generally correct, and there's no way for the jury to distinguish what a child said was done to them from what another group of children may have remembered was done. But I'm gonna wait and see what this looks like at the end. I'd like to have the jurors have some aid in sorting out what the claims are here, but I'm not sure just a summary that shows that a lot of kids testified about a lot of conduct is going to do much.

At subsequent stages of the trial, both defense attorneys renewed their objections to the chart, and Pilarski's counsel further disputed its accuracy. The trial court acknowledged that "it's been impossible for [the trial court] to monitor the overall accuracy of" the chart, and that it continued to "have concerns about receiving it as a summary exhibit." The trial court concluded, however, that the chart was "a relatively objective effort to summarize" the testimony and was "arguably essential to the jurors in sorting things out." Thus, while acknowledging that "there were occasionally inaccuracies here in terms of the color of the check and perhaps the placement of the check," the trial court explained "that those kind[s] of occasional inaccuracies" did not defeat the admissibility of a summary exhibit, particularly when it's clear to the jurors that as to any check, there "[might] have been a mistake here."

Accordingly, while declaring that it "may give the jury some cautionary instruction about it" and "may also not permit the jurors to have it in the jury room," the trial court received the chart "as a summary exhibit."

Instructing the jury, the trial court stated that it had received the chart "as a summary exhibit," but then added:

> I want to caution you with respect to any reliance on this exhibit in that it is to some extent a summary of evidence that was presented at trial.
>
> You observed the manner and way in which the State proceeded with the use of this exhibit, but it is the evidence that controls, and it is your recollection of the evidence that controls, and you should only rely on any summary to the extent that it's consistent with your recollection and to the extent that you feel it accurately and properly summarizes or reflects evidence that you have heard in the case.
>
> So I have received it, but I just want to caution you that it is received as a summary exhibit, and it is the evidence, and the testimony, and your recollection of that which controls.

Shortly after retiring, the jury requested the chart "for our review," and it is undisputed that the jury then received the chart and was able to refer to it during deliberations.[1]

---

[1] The record reflects no objection to or discussion of the jury's request. Although, on appeal, Olson criticizes the trial court for submitting the chart to the jury, he does not specifically challenge that decision.

## II. Standard of Review

Whether to admit or exclude evidence is within the trial court's sound discretion. *State v. Clark*, 179 Wis. 2d 484, 490, 507 N.W.2d 172, 174 (Ct. App. 1993). We will affirm the trial court's decision to admit evidence if the decision has a reasonable basis and was made in accordance with the facts of record and accepted legal standards. *Id.* These standards apply to a trial court's discretionary decision to admit a summary chart, whether under § 910.06, STATS., *see United States v. Winn*, 948 F.2d 145, 157–59 (5th Cir. 1991) (stating standard of review regarding admission of chart under FED. R. EVID. 1006), or under § 906.11(1), STATS., *see United States v. Pinto*, 850 F.2d 927, 935 (2nd Cir. 1988) (stating standard of review regarding admission of chart under FED. R. EVID. 611(a)(1)).

"Where the trial court fails to adequately explain the reasons for its decision, we will independently review the record to determine whether it provides a reasonable basis for the trial court's discretionary ruling." *Clark*, 179 Wis. 2d at 490, 507 N.W.2d at 174. If the trial court reaches the right result in admitting evidence but articulates the wrong legal rationale for doing so, we must affirm the admission of evidence. *State v. Holt*, 128 Wis. 2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985).

## III. Section 910.06, STATS.

Olson argues that the trial court erred in concluding that the chart was admissible "as a summary exhibit." He contends that the chart simply did not qualify as a "summary" under § 910.06, STATS. Olson is

737

correct and, indeed, the State agrees.[2] Section 910.06 provides:

> **Summaries.** The contents of voluminous writings, recordings or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at a reasonable time and place. The judge may order that they be produced in court.

Clearly, the chart in this case was not a summary "of voluminous writings, recordings or photographs which cannot conveniently be examined in court." That is not to say, however, that the chart was not admissible under § 906.11(1), STATS. We conclude that it was.

## IV. Section 906.11(1), STATS.

Section 906.11(1), STATS., provides:

> **Mode and order of interrogation and presentation. (1)** CONTROL BY JUDGE. The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (a) make the interrogation and presentation

---

[2] The State notes, however, that neither the prosecutor nor the trial court referred to § 910.06, STATS. The State argues, therefore, that the chart "was not received under that section," but rather, was admitted under § 906.11(1), STATS.

The record is not entirely clear. Neither the prosecutor nor the trial court referred to *either* statutory section. The trial court, however, did use the terms of § 910.06, STATS., referring to the chart several times as a "summary," and ultimately did "receive it as a summary exhibit." The trial court made no comparable reference to the words of § 906.11(1), STATS. Thus, the record does not support the State's argument that the trial court did not admit the chart under § 910.06.

> effective for the ascertainment of the truth, (b) avoid needless consumption of time, and (c) protect witnesses from harassment or undue embarrassment.

As we have noted, the trial court commented that the "[j]urors need some help in a case like this sorting out who's who and what has been alleged as to whom," and that the chart could provide the jurors "some aid in sorting out what the claims are here." Unquestionably, the complexity of this trial—lasting eight days and involving two defendants, ten victims, multiple charges, and different forms and degrees of sexual assault—confirms the court's comments. Thus, although the chart in this case was not a summary exhibit constituting evidence under § 910.06, STATS., it qualified as a "pedagogical device" summarizing and organizing admitted evidence, under § 906.11(1), STATS. *See* 6 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, § 1006.08[4] (1997).

Courts and commentators have differed over whether such "pedagogical devices," in addition to being appropriate for use by counsel during trial, are also admissible. *Compare Winn*, 948 F.2d at 158–59, *with United States v. Johnson*, 54 F.3d 1150 (4th Cir.), *cert. denied*, 116 S. Ct. 266 (1995).[3] Even experienced litigators could disagree. Some, perhaps, might argue that the better approach is to admit such exhibits lest a jury be confused by the legalistic distinction between admitted and unadmitted exhibits used throughout a trial. Others, however, might maintain that the distinction between admitted and unadmitted exhibits

---

[3] *See also* Emilia A. Quesada, Comment, *Summarizing Prior Witness Testimony: Admissible Evidence, Pedagogical Device, or Violation of the Federal Rules of Evidence,* 24 FLA. ST. U. L. REV. 161 (1996).

can be important, and that the significance of that distinction is not lost on a jury properly instructed by a judge. Most probably would agree, however, that in most cases whether such charts ultimately are admitted usually is far less important than the manner in which they are prepared, the care with which the trial court monitors their use, the accuracy of jury instructions regarding their content, and the fairness of any decision allowing their submission to the jury.[4]

We conclude that no "hard and fast" rule controls whether pedagogical devices are admissible. Indeed, the split in the federal circuits suggests that strong reasoning supports the arguments on both sides and, not surprisingly, the district court decisions often seem to turn on the facts of each case. Thus, we conclude that the admissibility of pedagogical devices, under § 906.11(1), STATS., remains within the trial court's discretion. In this case, concluding that it was "arguably essential to the jurors in sorting things out," the trial court reasonably exercised discretion in admitting the chart.

As noted, the trial court acknowledged that "it's been impossible . . . to monitor the overall accuracy of"

---

[4] For example, in *United States v. Johnson*, 54 F.3d 1150 (4th Cir.), *cert. denied*, 116 S. Ct. 266 (1995), the court commented:

[T]he concern is not so much with the formal admission as it is with the manner in which the district court instructs the jury to consider the chart. Whether or not the chart is technically admitted into evidence, we are more concerned that the district court ensure the jury is not relying on that chart as "independent" evidence but rather is taking a close look at the evidence upon which that chart is based.

*Id.* at 1159.

the chart, and the State now concedes that "[s]ome checks may have been the wrong color," and "not every sighting of a sexual assault on the victims that was testified to by the witnesses was represented with a check on the chart." The trial court concluded, however, that the chart's "occasional inaccuracies" did not defeat its admissibility "particularly when it's clear to the jurors that as to any check, there may have been a mistake."

We agree. The preparation of a chart in the jury's presence (and in defense counsel's and the trial court's presence) reduces the potential for substantial inaccuracies going unnoticed or unchallenged. Indeed, inaccurate chart preparation by a prosecutor in front of a jury could compromise the credibility of the State's case. Olson argues, however, that "[o]nce the marks were placed by the prosecutor, effective cross-examination was eliminated. . . . There was simply no way for defense counsel to cross-examine any witness on the check marks, because the check marks were not the testimony of the witness." We disagree. Counsel could cross-examine each witness. Indeed, if cross-examination gained a concession or recantation from a witness, counsel could have crossed out a check mark or added some other mark to the chart to so indicate. *See Johnson*, 54 F.3d at 1160 ("Appellants asked numerous specific questions about the credibility of the underlying testimony summarized in the chart and were allowed to make marks on the chart where they thought a portion of the chart reflected a credibility issue.").

██

In this case, the trial court concluded that the chart was "a relatively objective effort to summarize" the testimony. Having reviewed the record, and noting

that Olson has not identified any significant inaccuracies in the chart that possibly could have rendered an unfair trial, we agree.[5] Therefore, while preparation of the chart by the trial prosecutor was problematic in some respects, its inaccuracies were inconsequential. Accordingly, we conclude that the admission of the chart was within the trial court's "exercise [of] reasonable control over the mode . . . of interrogating witnesses and presenting evidence so as to . . . make the interrogation and presentation effective for the ascertainment of the truth," under § 906.11(1), STATS. This becomes all the more apparent when we consider the trial court's cautionary jury instruction. *See Winn*, 948 F.2d at 158 (harmful effect of potentially prejudicial summary chart evidence neutralized by proper cautionary instruction).

## V. Jury Instructions

Olson argues that the trial court's jury instruction about the chart was "facially insufficient, i.e., it fail[ed] to tell the jury that the chart was a summary, without cautioning that the chart could be construed as merely the proponent's organization of the evidence." He additionally argues that even "[a]ssuming the . . . instruction was legally correct, the interplay with the

---

[5] Olson argues that the check marks were imprecise because many covered more than one box of the chart. As even a quick look at the chart confirms, however, although many check mark "tails" touch adjacent boxes, the check mark "heads" are definitively placed. Olson also argues that "the contiguous placement of check marks . . . pertaining to both defendants, unfairly compartmentalized all of the evidence." He does not explain how. *See Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W.2d 392, 398–99 (Ct. App. 1995) (appellate court need not consider "amorphous and insufficiently developed" arguments).

remaining instructions [involving the jury's considera-tion of exhibits as evidence] impermissibly [misled] the jury." We disagree.

Juries are presumed to follow proper, cautionary instructions. *See State v. Leach*, 124 Wis. 2d 648, 673, 370 N.W.2d 240, 253–54 (1985). Whether a jury instruction is an accurate statement of the law presents a question of law we review *de novo. See State v. Neumann*, 179 Wis. 2d 687, 699, 508 N.W.2d 54, 59 (Ct. App. 1993). "[T]he proper standard for Wisconsin courts to apply when a defendant contends that the interplay of legally correct instructions impermissibly misled the jury is whether there is a reasonable likeli-hood that the jury applied the challenged instructions in a manner that violates the constitution." *State v. Lohmeier*, 205 Wis. 2d 183, 193, 556 N.W.2d 90, 93 (1996). As noted, the trial court instructed the jury, in part:

> You observed the manner and way in which the State proceeded with the use of this exhibit, but it is the evidence that controls, and it is your recollection of the evidence that controls, and you should only rely on any summary to the extent that it's consis-tent with your recollection and to the extent that you feel it accurately and properly summarizes or reflects evidence that you have heard in the case.

Olson offers no authority that this instruction is legally inaccurate in any way and, indeed, the trial court's instruction is similar to those courts have approved in cases involving comparable charts. *See Winn*, 948 F.2d at 157–58 n.30; *see also Johnson*, 54 F.3d at 1160. We conclude that it is a clear and accu-rate instruction. It even implicitly referred to the manner in which the prosecutor prepared the chart,

thus allowing the jurors to correct for any inaccuracies they perceived.[6] Standing alone, the instruction properly guided the jury's consideration of the chart. In combination with the other accurate instructions, it left no "reasonable likelihood that the jury applied the challenged instructions in a manner that violates the constitution."[7]

*By the Court.*—Judgment affirmed.

---

[6] *See United States v. Howard*, 774 F.2d 838, 844 n.4 (7th Cir. 1985) ("[W]hen a trial court authorizes the use of such charts as a teaching device rather than as substantive evidence under Rule 1006, the preferred practice would be for the court to give a limiting instruction regarding this purpose."). *See also United States v. Pinto*, 850 F.2d 927, 935 (2nd Cir. 1988) ("With due regard for the possibility that the jury would accept such summaries [admitted under FED. R. EVID. 611(a)(1)] as documentary fact, the trial court repeatedly reminded the jurors of their responsibility to determine whether the charts accurately reflected the evidence presented," and the trial court did not err in allowing "the properly admitted summary charts into the jury room during deliberations.")

[7] Olson also argues that "the court's cautionary instruction was too little and too late, and because it was not, like the other instructions, given to the jury to use during deliberations, not likely to be understood, remembered, relied upon, and used to balance the effect of the chart being in the jury room." Once again, however, he offers no authority for this entirely speculative contention.