STATE of Wisconsin, Plaintiff-Respondent,

v.

Daniel H. HANSON, Defendant-Appellant.†

Court of Appeals

*No. 2008AP2759–CR. Submitted on briefs August 24, 2010.
—Decided October 6, 2010.*

2010 WI App 146

(Also reported in 792 N.W.2d 203.)

† Petition for review granted 2-8-11.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Chad A. Lanning* of *Lanning Law Offices, LLC*, West Bend.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Rebecca Rapp St. John*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Anderson, J.

¶ 1. NEUBAUER, P.J. The primary issue on appeal is whether a motor vehicle operator can be fleeing and eluding the police under Wis. Stat. § 346.04(3) (2007–08)[1] if that operator is ostensibly driving to police (e.g., a police station). The answer is yes. Under the statutory language, if that operator has willfully disregarded a visual signal from any officer so as to interfere with the operation of traffic or pedestrians, the operator's intended destination is irrelevant. We therefore reject Daniel H. Hanson's appeal from a judgment of conviction for eluding an officer contrary to § 346.04(3) and two counts of obstructing an officer contrary to Wis. Stat. 946.41(1). We conclude that there was sufficient evidence to sustain his conviction for eluding an officer. We reject his contention that the real controversy was not fully tried because the trial court erroneously exercised its discretion in admitting certain evidence and testimony at trial. We affirm the judgment.

## BACKGROUND

¶ 2. On May 7, 2007, Hanson was charged with one count of fleeing an officer and two counts of

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

obstructing an officer. The charges stemmed from an incident occurring on June 29, 2006. The facts underlying the charges were testified to at trial. The arresting officer, Deputy Eric Klinkhammer of the Kenosha sheriff's department, testified that on June 29, 2006, he was monitoring traffic on Interstate 94 in Kenosha county. He was accompanied by a ride-along intern, Randi Derby. At approximately 10:05 a.m., Klinkhammer observed a red vehicle traveling in excess of the speed limit. Without activating his lights, Klinkhammer pulled up next to the vehicle, motioned for the driver to pull over to the right, and then dropped back and activated his lights. The vehicle slowly pulled over to the side of the interstate, and Klinkhammer pulled in approximately one car length behind it. Just after Klinkhammer called in the stop on his radio, he noticed Hanson standing near the rear bumper of Hanson's vehicle. Klinkhammer testified that he then took his PA microphone and told Hanson three times to get back into his car. Hanson did not comply.

¶ 3. Klinkhammer exited his squad car and told Hanson to get back into his car. Klinkhammer testified that Hanson refused: "He began to yell and scream. He began flailing his arms that I had no reason to stop him, that I was taking his rights away and that he didn't want to be there and he didn't want to deal with me." Klinkhammer testified that he pulled his baton off his belt and held it next to his leg so that Hanson would have a sense that it was a serious situation. Klinkhammer again asked Hanson to get back in his car and, because the situation was "getting out of control," Klinkhammer called for backup. At that point, Hanson got into his car and Klinkhammer approached his passenger-side window. Hanson eventually rolled down

145

his window and, according to Klinkhammer, "aggressively" put his driver's license out the window.

¶ 4. Klinkhammer advised Hanson that he was going to be cited for speeding and began to return to his squad car. Klinkhammer testified that before he reached the front bumper of his squad car, Hanson exited his car again and began yelling at him. Klinkhammer again radioed dispatch for backup and then extended his baton again before ordering Hanson to get back into his car. Hanson continued to pace back and forth by Hanson's car's rear bumper and failed to get back into his vehicle. Klinkhammer continued to order him into his vehicle, called again for backup, and then told Hanson he was under arrest. Hanson "turned quickly and began to run back to the car." Klinkhammer chased him, and as Hanson was entering his car, Klinkhammer grabbed his shirt. The shirt ripped as Hanson pulled away to get into his vehicle. Hanson locked the door and left the scene.

¶ 5. Klinkhammer testified that Hanson entered the interstate without interrupting the flow of traffic as he entered the center lane. Klinkhammer got into his squad car, activated his siren and began to follow him. As Hanson exited at Highway 50, backup officer Deputy Samuel Sturino blocked the end of the off-ramp with his squad car. The fully-marked squad car had its lights and sirens activated. Hanson maneuvered around the squad car and proceeded onto Highway 50. The testimony varies as to whether Hanson was caught in traffic or had braked for a traffic light, but his vehicle stopped and the officers were able to "box him in." They approached his window with guns drawn; Hanson refused to exit his vehicle. After giving him several warnings, the officers broke the window, removed him from the vehicle and directed him to the ground.

146

¶ 6. Hanson's testimony at trial contradicted Klinkhammer's in several respects. Hanson testified that he exited his vehicle with his license in his hand and greeted Klinkhammer with, "Hey, how you doing? Here's my license." According to Hanson, Klinkhammer "immediately" began screaming "at the top of his lungs" and had taken out his baton. Hanson returned to his vehicle. Klinkhammer approached his passenger-side window and took Hanson's license "very gruffly, very angrily." Hanson testified that upon exiting the vehicle a second time to ascertain why he was stopped, Klinkhammer immediately began screaming at him and extended his baton. Hanson claimed that when he turned to go back to his car, Klinkhammer grabbed him and struck him on the back of the head with the baton as his back was turned. Hanson denied ever being told that he was under arrest.

¶ 7. It is undisputed that from the time Hanson left the scene of the initial stop until he was apprehended on Highway 50, he was in constant contact with a Kenosha 911 dispatcher. Hanson called 911 to report that a Kenosha police officer "beat [him] in the head" and to request assistance in locating the nearest police station. The recording of the 911 call was introduced at trial. Hanson can be heard informing the 911 dispatcher that he was going to the police station and that he would not pull over because he believed the officer would beat him with a stick; he was scared for his life.

¶ 8. Hanson argued at trial that he was acting in self-defense when he fled from Klinkhammer and the scene of the initial stop.[2] A jury nevertheless found

---

[2] The trial court instructed the jury:

Self-defense is an issue in this case. The law of self-defense allows the defendant to violate the criminal

Hanson guilty of all three charges. The court entered judgment on September 12, 2008. Hanson appeals.

¶ 9. Hanson raised evidentiary issues with the court before, during, and after testimony. Additional facts pertaining to these issues will be set forth as they relate to our discussion.

## DISCUSSION

¶ 10. Hanson contends that the evidence at trial was insufficient to sustain his conviction for eluding an officer because the State failed to prove that Hanson knowingly fled or attempted to elude. Hanson also argues that the trial court's rulings on several evidentiary issues resulted in the real controversy not being fully tried. Hanson requests this court to grant a discretionary reversal under Wis. Stat. § 752.35. Hanson's arguments fail for the reasons set forth below.

*Sufficiency of the Evidence*

¶ 11. Hanson's first challenge on appeal requires us to apply Wis. Stat. § 346.04(3) and to review whether the evidence presented to a jury was sufficient to support the jury's verdict. The application of a statute to facts is a question of law, subject to our independent review. *State v. Booker*, 2006 WI 79, ¶ 12, 292 Wis. 2d 43, 717 N.W.2d 676. Also subject to our independent

---

law only if, one, the defendant believed that there was an actual or imminent unlawful interference with the defendant's person; and two, the defendant believed that his actions were necessary to prevent or terminate the interference; and three, the defendant's beliefs were reasonable.

review is the question of whether the evidence presented to the jury is sufficient to sustain its verdict. *Id.* (citing *State v. Poellinger*, 153 Wis. 2d 493, 501, 451 N.W.2d 752 (1990)). Evidence is insufficient to support a conviction only if the evidence, when viewed most favorably to the State, "is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *Poellinger*, 153 Wis. 2d at 501.

¶ 12. We begin by looking at the statute and the elements of the offense. WISCONSIN STAT. § 346.04(3) provides:

> No operator of a vehicle, after having received a visual or audible signal from a traffic officer, or marked police vehicle, shall knowingly flee or attempt to elude any traffic officer by willful or wanton disregard of such signal so as to interfere with or endanger the operation of the police vehicle, or the traffic officer or other vehicles or pedestrians, nor shall the operator increase the speed of the operator's vehicle or extinguish the lights of the vehicle in an attempt to elude or flee.

The instruction provided to the jury, WIS JI—CRIMINAL 2630 (operating a motor vehicle to flee or in an attempt to elude an officer), requires that the State prove two elements beyond a reasonable doubt: (1) the defendant operated a motor vehicle on a highway after receiving a visual or audible signal from a traffic officer or marked police vehicle and (2) the defendant knowingly fled or attempted to elude a traffic officer by willful disregard of the visual or audible signal so as to interfere with or endanger the operation of the police vehicle, the traffic officer, other vehicles, or pedestrians. The jury instruction defines "traffic officer" as "*every*

officer authorized by law to direct or regulate traffic or to make arrests for violation of traffic regulations." *Id.* (Emphasis added.)

■

¶ 13. Here, Hanson contends that the State could not prove that he was "knowingly fleeing or attempting to elude" the police. We understand Hanson to argue that there can be no fleeing-and-eluding charge if police know that he is going to stop his vehicle at a police station. The theory is simply that he cannot be fleeing and eluding police if he calls 911 and tells the police where he is going. However, the plain language of WIS. STAT. § 346.04 undermines Hanson's position. While Hanson speaks generally of fleeing "the police," the statute expressly makes it a violation of the law to elude "any traffic officer." Sec. 346.04(3). We agree with the State that the objectives of the statute are readily discerned from its language. It seeks to foster cooperation with individual officers at the time of the initial stop while also discouraging unsafe driving. Thus, as long as Hanson, after having received a visual or audible signal from a traffic officer or marked police vehicle, fled or attempted to elude that officer, it makes no difference under § 346.04(3) that he was fleeing to a police station. We therefore turn to whether there was sufficient evidence at trial to support Hanson's conviction for eluding an officer.

¶ 14. Both Klinkhammer and Sturino testified that Hanson operated his motor vehicle even though both officers had activated their emergency lights and sirens. Randi Derby, Klinkhammer's ride-along intern, and Anthony Bowen, a citizen witness, both testified as to this fact. Further, the audio recording of Hanson's 911 call indicates that Hanson continued to operate his vehicle despite receiving visual and audible signals from

the officers, both of whom were operating fully-marked squad cars. It is also clear from the 911 recording that Hanson knew that the officers were pursuing him, but he intended to proceed to a police station anyway.[3]

¶ 15. There was also sufficient credible evidence that Hanson's attempt to elude the officers interfered with or endangered the operation of other vehicles or pedestrians. Klinkhammer testified that Hanson interfered with vehicles as he cut over to exit at Highway 50 and that Hanson had to swerve to avoid hitting Sturino's squad car at the bottom of the off-ramp. Sturino testified that as he approached the Highway 50 off-ramp, Hanson's vehicle "swerved" and "looked like it was going to come right at [him]." Sturino made an "evasive maneuver to the left." Bowen also testified that as Hanson exited on Highway 50, Sturino had to "swerve" to avoid him. When asked whether Hanson did a maneuver that almost caused a collision, Bowen answered, "Yes."

██

¶ 16. Applying Wis. Stat. § 346.04(3) to the evidence presented at trial, we conclude that there was sufficient evidence to support the jury's guilty verdict.

*The Real Controversy Was Not Fully Tried*

██

¶ 17. Hanson next argues that he is entitled to a discretionary reversal under Wis. Stat. § 752.35[4] because the real controversy was not fully tried. Hanson

---

[3] As to the defendant's knowledge, Wis JI—Criminal 2630 instructs: "Knowledge must be found, if found at all, from the defendant's acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon knowledge."

[4] Wisconsin Stat. § 752.35 provides:

raises several evidentiary issues in support of his argument. We address each in turn, bearing in mind that evidentiary decisions are subject to a deferential standard of review and will not be overturned unless the trial court failed to consider the facts, apply the correct law, and reach a reasonable determination. *See State v. Alsteen*, 108 Wis. 2d 723, 727, 324 N.W.2d 426 (1982).

¶ 18. Hanson first argues that the trial court erred in excluding character evidence as to Klinkhammer's reputation in the community as being "confrontational, aggressive and hot-tempered."[5]

**Discretionary reversal.** In an appeal to the court of appeals, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record and may direct the entry of the proper judgment or remit the case to the trial court for entry of the proper judgment or for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with statutes or rules, as are necessary to accomplish the ends of justice.

[5] In pretrial discussions, Hanson's counsel informed the court:

We have a principal from a former school where Deputy Klinkhammer was a liaison officer, and she will testify through her contacts with students, administrators and other school teachers that Deputy Klinkhammer's reputation—[a]nd I can be more specific with the precise character trait. It is going to be worded that he has a reputation as being confrontational, aggressive and hot-tempered . . . . And that is based on her experience at the school at the time Deputy Klinkhammer was there. That was the reputation of him among those three groups of people, students, administrators and . . . other faculty as well.

Hanson contends that the excluded character evidence "would have been very helpful to the jury as one of the main issues in the case was self-defense." Hanson sought to introduce the evidence under WIS. STAT. § 904.04(1)(b), which addresses the admission of character evidence of the victim. Section 904.04(1)(b) provides:

> (1) CHARACTER EVIDENCE GENERALLY. Evidence of a person's character or a trait of the person's character is not admissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
>
> . . . .
>
> (b) *Character of victim.* Except as provided in s. 972.11(2) [rape shield law], evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]

Hanson's request for admission hinged on his characterization of Klinkhammer as the victim of Hanson's crime. The trial court denied his request based on its determination that Klinkhammer was not a victim.

¶ 19. Hanson relies on *State v. Haase*, 2006 WI App 86, 293 Wis. 2d 322, 716 N.W.2d 526, in support of his contention that Klinkhammer was the victim of his conduct. In *Haase*, the court addressed whether a police

---

In response to the State's objection that the testimony would come "dangerously close" to an other acts type of situation, Hanson's counsel contended that the evidence was admissible as "character evidence in the form of reputation or opinion testimony."

department was entitled to restitution for a damaged squad car under Wɪs. Sᴛᴀᴛ. § 973.20 following the defendant's conviction for eluding an officer. *Haase*, 293 Wis. 2d 322, ¶¶ 4, 6. The *Haase* court denied the department's request based on its determination that "the officers, not the [police] department and its budget, were the direct victims of [the defendant's] conduct." *Id.*, ¶ 14. Hanson asks this court to construe the *Haase* court's discussion of the term "victim" in the context of a restitution order under the facts of that case as holding that a police officer is always a victim of an "eluding an officer" offense. Hanson reads *Haase* too broadly. A primary purpose of restitution is to compensate the victim for losses that occur as a result of the defendant's criminal conduct. *State v. Longmire*, 2004 WI App 90, ¶ 11, 272 Wis. 2d 759, 681 N.W.2d 534. That an officer can be a victim of the crime of eluding an officer for purposes of restitution does not mean that an officer is victimized as a result of every such crime. Moreover, the analysis in *Haase* is employed to determine who has standing to seek restitution. We fail to see how the restitution cases, which address standing and damages, have any relevance at all.

■

¶ 20. The admission of character evidence under Wɪs. Sᴛᴀᴛ. § 904.04(1)(b) depends, as does all evidence, on its relevance. Here, the trial court found that the "label" of victim did not apply to Klinkhammer under the facts of this case and, therefore, § 904.04(1)(b) did not apply. The court stated, "The charges here of fleeing an officer and two counts of obstructing to this Court's way of thinking are victimless crimes . . . . It's a question of whether, in his actions, [Hanson] created a victim. I don't see in this set of facts where a victim was created." We see no error in the trial court's analysis.

While the testimony underlying Hanson's defense clearly portrayed Klinkhammer as the aggressor, the evidence did not support a finding that Klinkhammer suffered injury, sustained losses or was otherwise victimized so as to make relevant the proffered character evidence. The trial court's exclusion of the § 904.04(1)(b) victim character evidence was not error. The record reflects that the court considered the facts, applied the correct law, and reached a reasonable determination. *See Alsteen*, 108 Wis. 2d at 727.

¶ 21. Further, the exclusion of this character evidence did not prevent the real controversy from being tried. The jury heard Hanson's testimony that Klinkhammer screamed "at the top of his lungs," took out his baton, acted "gruffly" and "angrily" in taking Hanson's license, grabbed him, ripped his shirt, and struck him on the back of the head. The jury also heard testimony from four character witnesses that Hanson is a truthful and fair person. We agree with the State that the exclusion of testimony from a single witness as to Klinkhammer's reputation for being "hot-headed" did not prevent the real controversy from being fully tried.

¶ 22. Hanson next argues that the jury should not have heard about so many individual bad acts committed against deputies. Hanson's complaint stems from three comments made by Klinkhammer during the course of his testimony relating to the need for deputy safety during traffic stops and from the State's reference to this testimony during its closing. Klinkhammer referenced: (1) a deputy who was forced to retire after sustaining an injury during a traffic stop, (2) videos shown on television shows in which police officers "get[] struck and killed" by passing vehicles during traffic stops, and (3) the murder of a Kenosha county sheriff's

155

deputy who was shot during a traffic stop approximately one year prior to Hanson's trial. In closing argument, the State noted, "It wasn't that long ago in this community where a routine traffic stop ended very, very tragically." Hanson's counsel objected to this statement but the objection was overruled. Hanson argues that the State's reference appealed to the emotions of the jurors and prejudiced them against him.

¶ 23. We reject Hanson's contention that these comments highlighting the importance of officer safety prevented the real controversy from being fully tried. The comments were made by Klinkhammer to explain why he conducts traffic stops in the manner he does—requiring the driver to remain in the vehicle and approaching the vehicle on the passenger side. On each occasion, the court found the testimony relevant and overruled Hanson's objections. We agree with the trial court that Klinkhammer's comments were relevant and provided context for his concern when Hanson exited his vehicle on the interstate and would not cooperate. We reject Hanson's contention that the admission of this testimony prevented the real controversy from being fully tried.

¶ 24. We also reject Hanson's contention that the admission of the unredacted 911 recording necessitates discretionary reversal. Hanson contends that the unredacted 911 recording contained inadmissible hearsay statements made by the dispatcher such as "you're violating the law" and "you're endangering other cars." However, Hanson also acknowledges that the jury was given a cautionary instruction and that the defense never requested that the recording be redacted. Prior to playing the 911 recording, the court cautioned the jury:

156

> [T]he 911 operator that you will hear on the recording was not an eyewitness to this event and, in fact, was miles away at the time he took the phone call from the defendant. Any comments made by the 911 operator in the recording regarding laws being broken are the operator's conclusions. It is for you, the jury, to decide based on the evidence presented in court and under the instructions the Court will give you at the end of the case whether or not the defendant endangered or interfered with the operation of another vehicle and whether or not the defendant violated any law.

It is well established that "[j]uries are presumed to follow proper, cautionary instructions." *State v. Olson,* 217 Wis. 2d 730, 743, 579 N.W.2d 802 (Ct. App. 1998). While Hanson argues that the cautionary instruction allowed the jury to speculate that the 911 operator had knowledge outside the record supporting his conclusions, we disagree. The instruction clearly informs the jury that the operator's comments as to laws being broken are the operator's conclusions and the jury is to arrive at its own conclusions based on the evidence presented. We reject Hanson's contention that the admission of the unredacted 911 recording warrants discretionary reversal.[6]

## CONCLUSION

¶ 25. We conclude that there was sufficient evidence presented at trial to support the jury's finding that Hanson knowingly fled or attempted to elude an

---

[6] Hanson raises two other evidentiary issues that he concedes do not present a "major problem" standing alone. However, he contends that these issues contribute to the need for discretionary reversal when combined with the other alleged errors. Based on our rejection of the other arguments raised by Hanson in support of discretionary reversal, we need not reach these issues.

officer. That the evidence also demonstrated that Hanson was "fleeing" to a police station at the time of the offense is of no consequence under WIS. STAT. § 346.04(3). We further conclude that none of the evidentiary issues raised by Hanson prevented the real controversy from being fully tried. We therefore decline Hanson's request for discretionary reversal pursuant to WIS. STAT. § 752.35.

*By the Court.*—Judgment affirmed.