NEUBAUER, C.J.[1]
¶1 Kurt F. Froebel appeals from a judgment convicting him of interfering with lawful hunting, contrary to WIS. STAT. § 29.083(2)(a). Froebel argues his conviction should be overturned for three reasons: the evidence does not show that he impeded or obstructed the hunters, the hunters were not engaged in "lawful" hunting, and the evidence does not show that Froebel's intent was to prevent the taking of a wild animal. Because the evidence sufficiently shows Froebel impeded or obstructed the hunters whose hunting was not shown to be unlawful and whose plain intent was to prevent the taking of a wild animal, we affirm.
BACKGROUND
¶2 Froebel resides in the Town of Merton on a property divided by the Oconomowoc River. Tom Richter, a friend, asked Froebel if Richter and his son could come out to Froebel's property to go duck hunting. They arranged for Richter and his son to come out on December 2, 2017.
¶3 On December 2, Froebel put on his hip boots and went down to the river to meet Richter and his son. At the river, Froebel spotted two hunters and, once within twenty-five to thirty feet, he realized these hunters were not Richter and his son. Froebel also saw two pieces of timber in the river, which he decided to remove. One of Richter's dogs joined Froebel as he entered the river.
¶4 At this point, one of the hunters, Dustin Zellmer, began videotaping, sensing there might be a problem. The videotape was received as evidence at the trial and serves as the basis for many of the following facts.
¶5 As Froebel approached, Zellmer asked a couple of times, "What's going on," to which Froebel eventually responded, "What do you mean what's going on?" Zellmer said, "We're hunting here and your kind of harassing us." Froebel angrily responded, "This is my [expletive] property, not yours! I'll walk where the hell I want!" Froebel is a few feet away from Zellmer at this point. Froebel then claimed to own the river bottom upon which the hunters were standing. Zellmer disagreed, saying these were navigable waters. Zellmer suggested they should get the conservation warden. Froebel said he knew what the law was on the subject and that Zellmer should feel free to get the warden.
¶6 Zellmer asked why it was a problem for them to hunt there and noted they have been hunting there for three years. Froebel at first flatly denied that they had hunted there, but then complained that they had been dropping ducks on his property. Froebel suggested that they should go farther down the river to hunt in front of someone else's property. The hunters left.
¶7 Zellmer called the nonemergency number for law enforcement. A few days later, Wisconsin Department of Natural Resources Conservation Warden Marcus Medina spoke to Froebel on the phone. Froebel acknowledged he had a confrontation with the hunters and said that "he was concerned that hunters were crippling water fowl, trespassing, and ... that he simply does not want folks hunting in the Oconomowoc River near his property." Medina issued Froebel a citation for violating WIS. STAT. § 29.083(2)(a) for "[i]mpeding and obstructing lawful hunting."
¶8 In a trial to the court, Froebel admitted that he "was not happy" that Zellmer and his fellow hunter were hunting only 180 yards from his house. Froebel claimed to have had problems with duck hunters hunting too close to his house and unlawfully dropping shot and ducks on his property, which they cannot retrieve without trespassing.
¶9 Froebel testified that, after he had removed the timbers from the river, Zellmer came across the river with his gun and said, "I'll knock you on your ass, you old [expletive]." Froebel responded, "[G]o for it." Richter confirmed the exchange while Zellmer denied it. This is not on the video.
¶10 Zellmer testified that Froebel's "presence" would have impeded his hunting "[i]f there would have been birds flying." It turned out, however, to be a "dead day. There [were] no birds flying whatsoever, so it was pretty bleak to say the least." Neither Zellmer nor his fellow hunter fired any shots that day. Zellmer disputed how close they were to Froebel's residence, saying that he had a phone app that calculated the distance at .18 miles (over 300 yards). He was unable to access that app at trial. Zellmer also testified he had left gear on Froebel's property.
¶11 In reaching its determination that Froebel violated the statute, the trial court explained its findings and reasoning in part as follows:
Mr. Froebel could have best been described as being confrontational and being obnoxious under the circumstances.
[C]learly [he] was yelling and swearing at them.... Certainly, it's the type of conduct that can constitute disorderly conduct, though that's not an issue that's before the court.
And I fully understand Mr. Froebel's concerns, concerns of people that end up essentially ... shooting and shot dropping on his property, dead birds ending up on his property. Certainly, that's problematic. It is irritating. It's frustrating.
The court understands and acknowledges all of that. But simply because it has occurred in the past doesn't give Mr. Froebel the right to simply decide that he's not going to let anybody hunt there. He doesn't have that right.
The river is not his property. And in fact it's defined as a navigable waterway. Individuals have the right to freely use it which means walking on it....
Mr. Froebel can preclude individuals from entering the river from his property, but he cannot preclude them from being on the river and using the river....
....
Clearly, Mr. Froebel doesn't want people hunting in the area. I understand that.
....
[T]here's nothing in this record that indicates specifically, that Dustin Zellmer was doing anything that would be defined as illegal....
Again, Mr. Froebel cannot control or prohibit or preclude people from being in the river. People coming on his property and retrieving ducks that may be shot-Yes, he can. There's nothing to indicate that any of that occurred.
....
[E]ven accepting Mr. Froebel apparently went down to the river, expecting it to be his friend, at some point, he certainly, made a determination very quickly, that it was not his friend and proceeded to literally confront them and to be argumentative with them about their being on the river, hunting.
And as said, by his own statement, he simply doesn't want to have people hunting there. Again, I understand that, but that's not within his right under the circumstances.
Mr. Richter even acknowledged that at least for a period he was there, Mr. Froebel being in the river in that area, and tromping around would by definition, affect the ability to hunt. I mean, that's essentially what we have here.
Given all of that, I am satisfied that the State has met its burden. I am going to find Mr. Froebel guilty....
Clearly, Mr. Froebel confronted them. He didn't wish them to be there. Again, I understand that, but unfortunately, he doesn't have the right or the authority to keep people from hunting in that area on the river, as long as they are doing so legally.
DISCUSSION
The Statutory Law and Standard of Review
¶12 Froebel was convicted of violating WIS. STAT. § 29.083(2)(a), which provides as follows:
(2) PROHIBITIONS . (a) No person may interfere or attempt to interfere with lawful hunting, fishing, or trapping with the intent to prevent the taking of a wild animal, or intentionally interfere with or intentionally attempt to interfere with an activity associated with lawful hunting, fishing, or trapping, by doing any of the following:
1. Harassing a wild animal or by engaging in an activity that tends to harass wild animals.
2. Impeding or obstructing a person who is engaged in lawful hunting, fishing or trapping.
3. Impeding or obstructing a person who is engaged in an activity associated with lawful hunting, fishing or trapping.
4. Disturbing the personal property of a person engaged in lawful hunting, fishing or trapping.
5. Disturbing a lawfully placed hunting blind or stand.
6. Disturbing lawfully placed bait or other material used to feed or attract a wild animal.
7. Engaging in a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose and that are intended to impede or obstruct a person who is engaged in lawful hunting, fishing, or trapping, or an activity associated with lawful hunting, fishing or trapping, including any of the following:
a. Maintaining a visual or physical proximity to the person.
b. Approaching or confronting the person.
c. Photographing, videotaping, audiotaping, or through other electronic means, monitoring or recording the activities of the person. This subd. 7. c. applies regardless of where the act occurs.
d. Causing a person to engage in any of the acts described in subd. 7. a. to c.
8. Using a drone, as defined in [ WIS. STAT. §] 941.292(1), to conduct any activity prohibited under subds. 1. to 7.
¶13 Although neither the citation nor the judgment of conviction identify the specific statutory subdivision, both Medina and the court indicated that Froebel was charged with and convicted of violating subd. (2)(a)2. of WIS. STAT. § 29.083. That subdivision prohibits anyone from "[i]mpeding or obstructing a person who is engaged in lawful hunting, fishing or trapping." Sec. 29.083(2)(a)2.
¶14 Our review requires us to interpret and apply a Wisconsin statute to a set of facts and to consider whether the evidence was sufficient to support the verdict. Both reviews are questions of law, subject to our independent review. See Estate of Grochowske v. Romey , 2012 WI App 41, ¶14, 340 Wis. 2d 611, 813 N.W.2d 687 ; State v. Hanson , 2010 WI App 146, ¶11, 330 Wis. 2d 140, 792 N.W.2d 203. "Evidence is insufficient to support a conviction only if the evidence, when viewed most favorably to the State, 'is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt.' " Hanson , 330 Wis. 2d 140, ¶11 (citation omitted).
Froebel Asserts There Was No Impeding or Obstructing
¶15 Froebel argues the evidence does not show a statutory violation. He asserts the terms "impede" and "obstruct" require a physical aspect, which is missing here, and a single confrontation is not enough. He points out the statute does not define "impeding" or "obstructing," but that we have had occasion to consider the definitions of those terms in an overbreadth challenge to the statute in State v. Bagley , 164 Wis. 2d 255, 474 N.W.2d 761 (Ct. App. 1991). Relying on WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1976), the court noted the following definitions:
Impede [means] to interfere with or get in the way of the progress of < storms impeded the vessels>: hold up: BLOCK < the departure was impeded by heavy rain> < his progress was impeded by sickness and poverty>....
Obstruct [means] to block up: stop up or close up: place an obstacle in or fill with obstacles or impediments to passing < traffic -ing the street> < veins -ed by clots> 2: to be or come in the way of: hinder from passing, action, or operation: IMPEDE, RETARD....
Id. at 262-63 (citation omitted). The Bagley court concluded that these words contemplated "physical interference or obstruction, not verbal." Id. at 263. Froebel contends therefore that any "verbal interference" by him, including raising his voice, does not violate the statute.
¶16 Froebel further argues that a single confrontation is insufficient, in that subd. (2)(a)7. of WIS. STAT. § 29.083 describes "[a]pproaching or confronting" as impeding or obstructing behavior, but only if done "in a series of 2 or more acts carried out over time, however short or long, that show a continuity of purpose." Sec. 29.083(2)(a)7. That means, Froebel asserts, his one confrontation with the hunters does not constitute impeding or obstructing. We disagree.
¶17 Froebel's combative attitude and behavior with the hunters was sufficient to constitute "[i]mpeding or obstructing" lawful hunting. At the outset, Froebel's approach caught the hunters' attention (enough to cause Zellmer to start his video camera) when he waded into the river, rummaging through the water with a dog splashing and barking (it appears the dog belonged to Richter). Despite seeing that Zellmer and his friend were plainly trying to hunt in the river, Froebel continued to move in closer. After being largely non-responsive to Zellmer's simple queries, Zellmer told Froebel they were hunting and Froebel was "kind of harassing," which elicited from Froebel a loud and angry response: "This is my [expletive] property, not yours!" Continuing with the belligerent tone, Froebel claimed to own not just both sides of the river, but the river bottom as well, that he could go anywhere on his property that he pleased, suggested to the hunters to go further down the river and hunt by someone else's house, and accused them of unlawfully dropping ducks on his property. After about three minutes of dealing with a property owner who clearly did not want them hunting there, the hunters left.[2]
¶18 To the extent "impede" or "obstruct" requires a physical dimension, it was satisfied here by Froebel's entry into the river where he sees hunters, approaching them, wading closely by, pushing at floating timbers, and forcefully and loudly arguing with them and clearly conveying to them that they should leave. We also disagree with Froebel's contention that this was just "one" confrontation and that therefore, per subd. (2)(a)7., it cannot constitute "impeding or obstructing" under subd. (2)(a)2. This was more than just a simple and single "confrontation" as contemplated under subd. (2)(a)7. The duration, intensity, and clear purpose of Froebel's quarrelsome behavior rose to the level of "impeding or obstructing" under subd. (2)(a)2. Froebel was "get[ting] in the way of the progress" of the hunters, "hold[ing] up" their hunting, and was an "obstacle[ ] or impediment[ ]" to hunting ducks on the river. See Bagley , 164 Wis. 2d at 262-63. Even a lay person knows that hunting requires quiet and calm.
¶19 The testimony supports this conclusion. Zellmer testified that Froebel's presence "absolutely" would have impeded his ability to hunt, as birds do not come into areas where people are arguing and splashing. Medina, the conservation warden, testified that Froebel's conduct impeded the hunting because Froebel was standing in the zones of fire, preventing any safe discharge of a weapon, and that a man and dog walking through the river as Froebel did would impede the success of any hunt. Even Richter, Froebel's friend, had to admit that Froebel's standing in the river would "certainly affect[ ] their hunting."
Froebel Asserts That the Hunters Were Not Hunting Lawfully
¶20 No violation of the statute occurred, Froebel asserts, because the statute only applies to hunters engaged in "lawful hunting." See WIS. STAT. § 29.083(2). Froebel argues the hunters violated a local ordinance that prohibits firearms within 200 yards of a residence, and they committed trespassing by leaving gear on Froebel's property. Froebel is incorrect.
¶21 The ordinance states that "[n]o person shall, while on the lands of another, discharge a firearm within 200 yards of any building devoted to human occupancy situated on and attached to the lands of another." Town of Merton, Wis., Ordinance 9.01(3)(b) (Sept. 28, 1993). Although there was a dispute about the distance between the hunters and Froebel's residence, there is no dispute that a firearm was not discharged. Because no one "discharge[d] a firearm," the ordinance does not apply. Froebel's argument that the hunters nonetheless violated the ordinance because they obviously "intended" to discharge their weapons is unavailing. The ordinance does not outlaw mere intentions.
¶22 We also reject Froebel's claim that Zellmer was not "lawfully" hunting because he allegedly trespassed by having left some gear on Froebel's property. The facts and circumstances of the alleged trespass are scant. We do not know if Zellmer actually entered upon the property, or when, or any other detail. In any event, at the time that Froebel was interfering with the hunters in the river, there is no evidence that Zellmer was trespassing or otherwise acting unlawfully.
Froebel Argues that He Did Not Intend to Prevent the Taking of a Wild Animal
¶23 Finally, Froebel argues the State failed to show "intent," i.e., that he acted "with the intent to prevent the taking of a wild animal, or intentionally interfere with or intentionally attempt to interfere with an activity associated with lawful hunting." WIS. STAT. § 29.083(2)(a). We disagree.
¶24 In his testimony, Froebel made it clear he did not want people hunting near his house generally and "was not happy to see" Zellmer and his friend specifically. Froebel testified that he is a highly experienced hunter himself. It is reasonable to conclude that he was fully aware that his loud, antagonistic behavior, moving through the river toward the hunters, pushing at loose timbers, with a dog running beside him, would prevent the taking of a wild animal by the hunters. See State v. Ivy , 119 Wis. 2d 591, 598, 350 N.W.2d 622 (1984) ("[L]egal intent may be inferred from conduct. One is presumed to intend natural and probable consequences of his act." (citation omitted)). Within minutes of Froebel's arrival in the river, the hunters left, reasonably believing that any attempt to hunt and take a wild animal was untenable. Froebel's intent was plain-and successful.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2)(g) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

As noted, Froebel claimed that Zellmer came over and threatened to knock him down. Whether this occurred or not after the confrontation, it does not affect our review of whether Froebel violated the statute.