COURT OF APPEALS
DECISION
DATED AND FILED

January 24, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP697-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CM278

IN COURT OF APPEALS
DISTRICT II

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

TROY ALLEN SHAW,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Sheboygan County: ANGELA W. SUTKIEWICZ, Judge. *Affirmed*.

¶1     NEUBAUER, J.[1]  A jury convicted Troy Allen Shaw of criminal trespass to a dwelling, disorderly conduct, and obstructing an officer.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

Shaw appeals from the judgment of conviction and an order denying his postconviction motion, but challenges only the criminal trespass conviction. He argues the State committed plain error when it suggested to the jury in its closing argument that it could convict Shaw, who had been permitted to enter a house by a seventeen-year-old resident, of criminal trespass if it found that the teenager's father, who was not present when Shaw entered, did not consent to Shaw's presence. For the reasons explained below, this court concludes that the State's remarks, though improper, were not so egregious as to infect the trial with unfairness in violation of Shaw's due process rights under the doctrine of plain error. Moreover, even if the remarks did constitute plain error, they were harmless. Based on these conclusions, this court affirms.

## BACKGROUND

¶2 The charges against Shaw arose out of events that occurred on March 30, 2020, in Sheboygan, Wisconsin. That day, according to the evidence at trial, two City of Sheboygan police officers responded to a call about an individual causing a disturbance at an apartment complex near the southern edge of the city. When the officers arrived, they spotted a man matching the individual's description in the complex's parking lot. One officer testified that the individual, later identified as Shaw, appeared "very agitated, excited, flailing his arms, yelling, shouting, … angry and amped up." As the officers attempted to speak with Shaw, he walked away from them. Rather than follow him, the officers decided to speak with "witnesses and figure out what kind of a case we ha[d] first."

¶3    Shaw crossed the street and ended up in the driveway of a single-family residence in which Gary and his seventeen-year-old daughter Joan lived.[2] At the time, Gary was at work but Joan was at home with a friend. Joan testified that she observed Shaw standing in her driveway "kind of asking me to call the police," which prompted her to go outside and ask Shaw "what was going on." She testified that Shaw "asked to come inside because they were going to shoot him." Though Joan was unsure at that point who Shaw was concerned about, she let him in the house.

¶4    Back at the apartment complex, the two officers spoke with the person who made the 911 call and another witness. After those interviews ended, the officers were dispatched to Gary and Joan's house across the street in response to a 911 call placed by Shaw. When they arrived, they encountered Joan outside.

¶5    The State showed the jury video footage from the body cameras worn by the two officers. The footage showed Joan coming out of her house and confirming that Shaw was inside. She explained to the officers that she did not know Shaw but that he was worried the officers were going to shoot him and had asked Joan "if he could come in and [Joan] said 'sure, why not.'" Joan also confirmed that her father was not home. One of the officers asked Joan to go back into the house and tell Shaw to come outside. The officer then requested additional backup.

¶6    Joan testified that she went back into the house and told Shaw that the officers had a citation for him. According to her, Shaw expressed concern that

_____

[2] This court refers to the occupants of the residence by pseudonyms consistent with the policy set forth in WIS. STAT. RULE 809.86(1).

3

the officers would shoot him and lifted his shirt to show her he did not have a weapon. Joan then went back outside, told the officers that Shaw was not willing to come out because he feared being shot, and then went back in the house. She testified on direct examination that she thought she told Shaw that he had to leave her house, but when asked on cross-examination if she was "[o]ne hundred percent sure" about that, she said she could not remember but that she was sure that her friend "did several times."

¶7 Joan and her friend came back outside but Shaw remained in the house, telling officers he was "going to stay in here" and wanted to talk to the sheriff. Several minutes later, Joan received a call from her father, Gary. Joan gave her phone to the officer, who explained to Gary that Joan had let Shaw in the house and that he had "barricaded himself in." At trial, the officer confirmed that based on her conversation with Gary, she understood that Shaw no longer had permission to be in his house. Gary testified initially that he did not know if he ever told the officer that Shaw did not have permission to be in his house, but on cross-examination he stated that he "believe[d he] stated that." Gary did give the officers permission to enter his house to remove Shaw.

¶8 The officer who spoke with Gary asked him to come home, ended the call, and then told another officer that Gary wanted Shaw "out of his house." Police then told Shaw multiple times that the owner of the house wanted him out. Shaw initially responded, "where is she?," an apparent reference to Joan, and then told the officers they "were on County property" and refused to come out. (In crossing the street from the apartment complex to Gary and Joan's residence, Shaw left the Sheboygan city limits.) He told the officers repeatedly that Joan had invited him into the house. After some additional back and forth with Shaw, officers forced open a door at the back of the house and forcibly removed him.

4

¶9 Before closing arguments began, the trial court instructed the jury as to the elements of criminal trespass under WIS. STAT. § 943.14(2). The court instructed the jury that criminal trespass "is committed by one who intentionally remains in the dwelling of another without the consent of some person lawfully upon the premises, under circumstances tending to create or provoke a breach of the peace." It then informed the jury that the State had to prove, among other things, that "the defendant remained in the dwelling without the consent of someone lawfully upon the premises."

¶10 In its closing argument, the State reviewed the evidence that, in its view, proved this element beyond a reasonable doubt:

> [W]e heard testimony from the 17-year-old daughter, [Joan] … who indicated to us in her testimony that she's pretty sure that she told the defendant to get out of the house. She said she knows 100 percent that her [friend] told him to get out of the house multiple times. We also note he wasn't supposed to be in the house because the police officers told him, look, the father of this house told us to get you out of the house, and he came and testified to that effect.
>
> … At that point in time, they then say, hey, look, we've talked to the dad, he said you've got to get out. Approximately 6-and-a-half minutes later … is when the defendant, you can see, is being extracted from the residence. So he's got 6-and-a-half minutes to know that he does not have consent to be in the house, so that is true beyond a reasonable doubt.

The State returned to the issue of consent at the end of its argument on the trespass charge:

> And, again, how did the defendant know he doesn't have consent? We know that because [Joan], the daughter, testifies that she's pretty sure she told him you can't be here, we're certain that [her friend] told him he can't be there, and the cops told him that he can't be here.

¶11 In his closing argument, Shaw did not contest the facts of the incident, but argued that they created "confusion about who has consent, revokes consent, who's telling him that consent was revoked." He emphasized that Joan had "granted him permission to be in the house" and that he never heard "from anyone in authority with that house, [Gary] or [Joan]," "that he couldn't be there."

¶12 The jury found Shaw guilty of criminal trespass, disorderly conduct, and obstructing an officer. Shaw filed a postconviction motion arguing that the State had committed plain error in arguing that the jury could find him guilty of trespass "based on the lack of consent of an owner who was not on the premises." The postconviction court disagreed and denied that portion of Shaw's motion.[3] It acknowledged that "the prosecutor misspoke when he was arguing to the jury," but stated that the prosecutor's remark about finding Shaw guilty based on Gary's expression of nonconsent "was not part of the prosecutor's case, it was just something that was mentioned in closing argument." The court concluded that "the jury was able to make their determination from the testimony of [Joan] and decide whether or not consent was given."

## DISCUSSION

¶13 Shaw contends this court should vacate his trespass conviction because the State referred in closing to Gary wanting Shaw out of his house. "When a defendant alleges that a prosecutor's statements constituted misconduct, the test we apply is whether the statements 'so infected the trial with unfairness as

---

[3] The postconviction court did conclude that the evidence of guilt was insufficient on the obstruction count and signaled its intent to vacate that conviction, at which point the State agreed to dismiss the charge.

6

to make the resulting conviction a denial of due process.'" ***State v. Davidson***, 2000 WI 91, ¶88, 236 Wis. 2d 537, 613 N.W.2d 606 (quoting ***State v. Wolff***, 171 Wis. 2d 161, 167, 491 N.W.2d 498 (Ct. App. 1992)). The statements are not examined in isolation, but rather "in [the] context of the entire trial." ***State v. Mayo***, 2007 WI 78, ¶43, 301 Wis. 2d 642, 734 N.W.2d 115. Whether a due process violation has occurred is a question this court reviews de novo. ***State v. Luedtke***, 2015 WI 42, ¶37, 362 Wis. 2d 1, 863 N.W.2d 592.

¶14 Because Shaw did not object to the State's references to Gary's lack of consent, he must prove that those remarks constituted plain error. *See **State v. Nelson***, 2021 WI App 2, ¶46, 395 Wis. 2d 585, 954 N.W.2d 11 (2020). "Plain error is 'error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time.'" ***State v. Jorgensen***, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77 (quoting ***State v. Sonnenberg***, 117 Wis. 2d 159, 177, 344 N.W.2d 95 (1984)). An error must be "fundamental, obvious, and substantial" to qualify as plain error. ***Jorgensen***, 310 Wis. 2d 138, ¶23; *see also* WIS. STAT. § 901.03(4) (stating that plain error must "affect[] substantial rights" of a defendant to merit relief). As this standard suggests, Wisconsin courts "should use the plain error doctrine sparingly." ***Jorgensen***, 310 Wis. 2d 138, ¶21.

¶15 Wisconsin law contains no bright-line rule or test to determine when plain error exists; "[r]ather, the existence of plain error will turn on the facts of the particular case." ***Mayo***, 301 Wis. 2d 642, ¶29. In reviewing the facts, this court pays particular attention to "the quantum of evidence properly admitted and the seriousness of the error involved." ***Id.***

¶16    Shaw's plain error argument is grounded in the text of the trespass to dwellings statute, which states in relevant part as follows:

> Whoever intentionally enters or remains in the dwelling of another without the consent of some person lawfully upon the premises or, if no person is lawfully upon the premises, without the consent of the owner of the property that includes the dwelling, under circumstances tending to create or provoke a breach of the peace, is guilty of a Class A misdemeanor.

WIS. STAT. § 943.14(2).   This statute identifies two situations in which an individual is guilty of trespass.   First, an individual violates the statute if he or she "intentionally enters or remains in the dwelling of another without the consent of some person lawfully upon the premises." *Id.*  Second, if no one is lawfully on the premises, an individual is guilty of trespass if he or she enters or remains in another's dwelling without the owner's consent. *Id.*

¶17    Shaw argues that this case falls within the first situation because Joan was "lawfully upon the premises" the entire time he was in her house.  Thus, he argues, "the only issue for the jury should have been whether [Joan] revoked her consent … and whether Mr. Shaw knew that she had revoked her consent, if she had."  And because only Joan's consent was at issue, Shaw contends, the State improperly argued to the jury that it could find him guilty based on Gary's lack of consent.

¶18    This court agrees that the present case fits within the first situation described in WIS. STAT. § 943.14(2).  The evidence at trial showed that two persons were lawfully on Gary's property at the same time as Shaw—Joan and her friend, who was there at Joan's invitation.  Thus, Shaw's guilt turned on whether he "enter[ed] or remain[ed]" in the house without Joan's or her friend's consent.

8

¶19    Because Gary's consent—or lack thereof—was not determinative of whether Shaw was guilty of trespass, the State's references in its closing argument to the police telling Shaw that "the father of this house told us to get you out" and "we've talked to the dad, he said you've got to get out" were improper. Those statements were made during the State's discussion of the issue of consent and wrongly suggested to the jury that Shaw was guilty of criminal trespass if he remained in the house without Gary's permission.

¶20    So the State erred, but was this a "plain error"—that is, an error so "fundamental, obvious, and substantial" that it merits relief notwithstanding the lack of a contemporaneous objection? *See* WIS. STAT. § 901.03(4); ***Jorgensen***, 310 Wis. 2d 138, ¶23. Shaw argues it was because "the evidence was equivocal as to whether [Joan] revoked her consent" and "[t]he State presented significant evidence regarding [her] father's non-consent through extensive video evidence as well as the testimony of" Gary, Joan, and two police officers.

¶21    The State disagrees, citing the latitude given to counsel during closing arguments to comment on the evidence presented at trial. The State also argues that the prosecutor's remarks at trial were "no more egregious" than those our supreme court concluded were not plain error in ***Davidson*** and ***Mayo***. In ***Davidson***, the Wisconsin Supreme Court concluded that two statements made by a prosecutor during his closing argument—one that vouched for the victim's credibility and one that referred to a matter not in evidence—were not "so egregious as to constitute plain error" because they "were limited in scope, … the trial court sustained the defendant's objections and directed the prosecutor to limit his argument to the facts in evidence[, and t]he defendant made no motion for mistrial after the trial court addressed the objections." ***Davidson***, 236 Wis. 2d 537, ¶¶82, 83, 88. In ***Mayo***, the Wisconsin Supreme Court ruled that two

comments made by the State in its rebuttal argument about the role of defense counsel at a criminal trial, though improper, were not so unfair as to deny the defendant due process because defense counsel's role was a matter of common knowledge and the trial court had instructed the jurors that closing arguments were not evidence. *Mayo*, 301 Wis. 2d 642, ¶44.

¶22 This court concludes that the State's remarks were not a fundamental, obvious, and substantial error. First, as to the "quantum of evidence properly admitted," *see id.*, ¶29, the State presented substantial evidence that Joan and her friend told Shaw to leave the house after Joan had allowed him to enter. Though she acknowledged she was not certain, Joan testified that she believed she told Shaw that he had to leave the house after the police arrived. She also testified she was sure her friend told Shaw the same thing several times.[4] In its closing argument, the State highlighted both Joan's and her friend's statements to Shaw in arguing that he had remained in the house without consent.

¶23 Second, with respect to the "seriousness of the error involved," *see id.*, this court begins by noting that Shaw's challenge is limited to two references to Gary's lack of consent in the State's closing argument. Shaw does not argue that the evidence of Gary's lack of consent was improperly admitted. He concedes that the evidence was relevant to another element of the trespassing offense—

---

[4] For the first time in his reply brief, Shaw seeks to discount Joan's testimony that her friend told Shaw he had to leave as hearsay lacking in reliability, but Shaw did not object to it at trial, nor does he develop an argument that the evidence could have been properly excluded. This court declines to address this argument because it is not obliged to develop arguments for a party, or to address arguments that are undeveloped. *See Doe 1 v. Madison Metro. Sch. Dist.*, 2022 WI 65, ¶35, 403 Wis. 2d 369, 976 N.W.2d 584 (stating that appellate courts "'do not step out of our neutral role to develop or construct arguments for parties'" (citation omitted)).

whether Shaw's presence in the house "tend[ed] to create or provoke a breach of the peace." *See* WIS JI—CRIMINAL 1437.

¶24     Like the comments at issue in ***Davidson***, the State's references to Gary's lack of consent were limited in scope.  They were also immediately preceded by references to the evidence that Joan and her friend told Shaw he needed to leave the house.  And the jury was correctly instructed to focus on their consent, rather than Gary's:  to find Shaw guilty, the jury was told, the State had to prove that he "remained in the dwelling without the consent of someone lawfully upon the premises."  The trial court also instructed the jury that its verdict had to be based "on the law I give you in these instructions," that "[r]emarks of the attorneys are not evidence," and that the parties' closing arguments "are not evidence."  This court presumes that the jury heeded these instructions.  *See* ***State v. Hanson***, 2010 WI App 146, ¶24, 330 Wis. 2d 140, 792 N.W.2d 203, *aff'd*, 2012 WI 4, 338 Wis. 2d 243, 808 N.W.2d 390.

¶25     Based on these factors, this court concludes that the State's remarks were not so egregious as to meet the elevated threshold for plain error.  Wisconsin courts have found plain error in materially more aggravated circumstances than are present here, where improper remarks were made repeatedly or where the defendant's constitutional rights were violated.  *See, e.g.*, ***Jorgensen***, 310 Wis. 2d 138, ¶42 (concluding that improper comments by the State constituted plain error because they were "not merely 'a slip of the tongue' during closing argument" but rather "occurred repeatedly and in different forms at several junctures of the trial" and were "highly prejudicial, largely inadmissible, and cloaked with judicial approval"); ***Virgil v. State***, 84 Wis. 2d 166, 192-93, 267 N.W.2d 852 (1978) (concluding that admission of a detective's testimony about a statement made by a third party that linked the defendant to murder constituted plain error because it

violated the defendant's rights under the Confrontation Clause and "permitted the trial to proceed in violation of a fundamental condition necessary for a fair trial"). When considered in the context of the entire trial, the State's remarks here did not "'infect[ his] trial with unfairness [so] as to make the resulting conviction a denial of due process.'" *See **Davidson***, 236 Wis. 2d 537, ¶88 (citation omitted).

¶26    Even if Shaw could establish plain error, the State has carried its burden of proving that the error was harmless. *See **Jorgensen***, 310 Wis. 2d 138, ¶23. An error is harmless if it is "'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error[.]'" ***Mayo***, 301 Wis. 2d 642, ¶47 (quoting ***State v. Harvey***, 2002 WI 93, ¶46, 254 Wis. 2d 442, 647 N.W.2d 189). The factors Wisconsin courts consider in determining whether an error is harmless are:

> (1) the frequency of the error; (2) the importance of the erroneously admitted evidence; (3) the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence; (4) whether the erroneously admitted evidence duplicates untainted evidence; (5) the nature of the defense; (6) the nature of the State's case; and (7) the overall strength of the State's case.

***Jorgensen***, 310 Wis. 2d 138, ¶23.

¶27    Application of the factors that are relevant here leads to the conclusion that the State's remarks about Gary's lack of consent were harmless error.[5] As noted above, the State made only two brief references to Gary's lack of

---

[5] Because Shaw focuses solely on the State's closing argument and concedes that evidence of Gary's lack of consent was relevant to a different element of the trespassing charge, the second, third, and fourth harmless error factors, which focus on the impact of "erroneously admitted evidence," are of limited utility to the analysis of harmless error in this case. *See **State v. Jorgensen***, 2008 WI 60, ¶23, 310 Wis. 2d 138, 754 N.W.2d 77.

consent during its closing argument. Each reference followed a discussion of Joan's testimony that she and her friend told Shaw to leave her house, which the jury instructions directed the jurors to focus on in deciding whether Shaw was guilty. Although Shaw's defense to the trespass charge focused on the issue of consent, the overall strength of the State's evidence persuades this court that the jury would have found him guilty of trespass even absent the State's remarks.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.